RICHARD GRISSOM, Plaintiff-Appellant, v. THE BOARD OF EDUCATION OF BUCKLEY-LODA COMMUNITY SCHOOL DISTRICT NO. 8 *et al.*, Defendants-Appellees.

Fourth District    No. 14449

Opinion filed December 16, 1977.

Richard B. Opsahl, of Allen & Korkowski & Associates, of Rantoul, for appellant.

Thomas, Mamer, Haughey & Miller, of Champaign, for appellees.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:
Plaintiff Richard Grissom, a tenured teacher, was dismissed from his position by defendant the board of education of Buckley-Loda Community School District No. 8 (the board) following a public hearing. Plaintiff filed a complaint for administrative review in the circuit court of Ford County (Ill. Rev. Stat. 1973, ch. 110, par. 267) and the court affirmed the board's decision. Plaintiff appeals (Ill. Rev. Stat. 1973, ch. 110, par. 276).

At the time of the hearing, plaintiff was 57 years old and had taught since 1949. The Buckley-Loda District hired him in 1959 to teach agriculture. In 1971, the agriculture program at Buckley-Loda was discontinued and plaintiff was given an "honorable dismissal." He filed a petition for writ of mandamus in the circuit court of Ford County and the

court awarded him damages and ordered that he be reinstated. Pending appeal, plaintiff was reinstated for the 1972-73 school year. An appeal and cross-appeal from that judgment was dismissed by this court. (11 Ill. App. 3d 55, 296 N.E.2d 624.) Plaintiff was rehired for the 1973-74 school year while the board petitioned the supreme court for leave to appeal. The petition was denied during the September 1973 term (54 Ill. 2d 592).

At a regular meeting on March 13, 1974, the board voted to proceed with plans to dismiss plaintiff as of the end of the 1973-74 school year. At a special meeting on March 25, 1974, the board voted "not to rehire" plaintiff for the 1974-75 school year. The following day, the president of the board and the district superintendent sent plaintiff a letter stating that the board had voted to seek plaintiff's dismissal from his position as a teacher effective May 31, 1974. The letter stated that plaintiff was dismissed for "incompetency and negligence, and because the best interests of the school system require such dismissal." The letter specifically charged plaintiff with (1) inability or failure to discipline students or appropriately maintain class discipline, (2) failure to protect school property, (3) inability or unwillingness to convey proper classroom instructions to students, and (4) failure to accept and act upon suggestions and directions from his superiors. The second charge was subsequently dismissed.

In a letter dated April 2, 1974, plaintiff requested a public hearing and a bill of particulars. The bill of particulars provided by the board listed some general observations. pertaining to each charge, but no specific incidents, dates or names. Plaintiff's second request for a more specific bill of particulars was denied.

The hearing commenced on May 7, 1974, and continued on 10 subsequent dates throughout June, July and August. Five students from plaintiff's seventh grade math or social studies classes or his seventh-eighth grade study hall testified on behalf of the board. They stated that about a .month after school started, the students in plaintiff's classes became very noisy and rowdy and that this unruliness interfered with their studies. Three of the students testified that they asked plaintiff for help on a number of occasions but he said he didn't have time, he had to "babysit" the class.

One of the students testified that plaintiff usually did not notice or ignored what was happening but on other occasions, plaintiff would lose his temper and would shake and tremble. The students also testified that when students were noisy or misbehaving, plaintiff would hit them with a meterstick or a hardbacked eraser. They also claimed that plaintiff slapped some students in the face. They related one incident in which plaintiff slapped a girl who swore at him. The testimony was conflicting on whether she hit plaintiff first.

On two other occasions, plaintiff took two different boys to the office or back to the study hall by putting his arm around the boy's neck in a choke hold. The school principal and the superintendent each witnessed one of those "choking" incidents. The principal testified that the student he saw was audibly gasping for air and that plaintiff threw the student to the floor. Plaintiff denied that he threw the student.

The school principal testified that toward the end of November 1973, he noticed an increase in the noise level coming from plaintiff's classes and observed that the discipline level had dropped considerably. Plaintiff complained to him that he was having problems with certain students and having difficulty keeping the class interested. As the school year progressed, plaintiff continued to become more agitated by these problems and when the principal tried to discuss these problems with him, plaintiff's voice would rise to a loud level, he would become very agitated, his face would get red and his hands would shake. The principal testified that he talked with plaintiff in November and December and made suggestions concerning teaching techniques and ways to correct the discipline problems. In January, February and March, he sent plaintiff several memos regarding classroom control in general as well as specific incidents which had been brought to his attention.

The superintendent also testified that he noticed plaintiff was having difficulty with his classes about 6 or 7 weeks after school started and that things got worse as the school year progressed. He had several discussions with plaintiff concerning plaintiff's teaching techniques, his attitude, and his use of discipline. In February, the superintendent notified plaintiff that he was relieved from teaching his seventh grade math class and from supervising a study hall three days a week. Before the close of the school year, plaintiff was relieved from all teaching duties.

Both the principal and the superintendent testified that there had been more discipline problems in the school than would be expected and that one of the boys in plaintiff's social studies class and study hall was a well-known discipline problem. However, the teacher who replaced plaintiff in the math class testified that he had no problems with the students in that class, that he established his rules and that students would be quiet and continue working if he left the room.

Three students from plaintiff's high school history classes testified on behalf of plaintiff. They stated that they thought plaintiff was a good teacher and that discipline in those classes was not a big problem.

Plaintiff testified that he had been hired by the Buckley-Loda District to teach agriculture and that in subsequent years he also taught physics, biology, chemistry and general science courses. For the 1973-74 school year, he was assigned to teach three classes of high school American history, one seventh grade math class and one seventh grade social studies

class. He stated that he was not surprised at the history or social studies assignment, but was rather surprised at the math assignment because there was nothing in his record to indicate that he was qualified to teach math and he had never taught math except for one year when he taught all subjects in an elementary school class.

Plaintiff also testified that his doctor had put him on a diet in December 1973 and that afterward people told him he was agitated, but he did not think that he was so agitated or upset that it was necessary to ask for some time off.

Section 24—12 of the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 24—12) sets forth the procedure whereby a school district may dismiss a tenured teacher for cause. The governing board of the district initiates the proceedings by deciding to charge a teacher and then serving the teacher with written notice of the charges. The notice must be served at least 60 days before the effective date of the dismissal or discharge proposed by the district. The statute also provides, that prior to electing to discharge a teacher, if the charges are "on account of causes that are considered *remediable*, the teacher shall be given reasonable warning in writing, stating specifically the causes which, if not removed, may result in charges" (emphasis added). The parties agree that plaintiff was given no such written warning. The principal question on appeal is whether the causes of the charges here were "remediable."

The supreme court has recently passed upon this question in *Gilliland v. Board of Education* (1977), 67 Ill. 2d 143, 365 N.E.2d 322, and *Aulwurm v. Board of Education* (1977), 67 Ill. 2d 434, 367 N.E.2d 1337. In *Gilliland*, the plaintiff was a second and third grade teacher. Without giving her the formal warning required for remediable causes, the school board charged her with being uneven in administering discipline, vacillating from excessive strictness coupled with excessive use of physical punishment to excessive showings of affection for pupils, harassing and shouting at students and exhibiting an uncontrollable temper. The charges also alleged that she was damaging the pupils' attitude toward school and that numerous parents had complained. The evidence supported the charges and also showed that the teacher's superiors had held conferences with her and had given her suggestions as to how to deal with her problems. The dean of a college of education testified on behalf of the board. In answer to a hypothetical question describing a teacher's conduct conforming to the evidence of plaintiff's conduct, the dean stated the opinion that the causes of the conduct were not "remediable." He emphasized the compulsive nature of the conduct described.

The court defined irremediability in the following terms:

> "The test in determining whether a cause for dismissal is irremediable is whether damage has been done to the students,

faculty or school, and whether the conduct resulting in that damage could have been corrected had the teacher's superiors warned her. (*Yesinowski v. Board of Education* (1975), 28 Ill. App. 3d 119, 123; *Reinhardt v. Board of Education* (1974), 19 Ill. App. 3d 481, 484.)" 67 Ill. 2d 143, 153, 365 N.E.2d 322, 326.

The court noted that the evidence showed that damage had been done to the pupils and to the school and that the plaintiff had been unable to change her conduct despite many complaints by parents and resultant discussion between the plaintiff and her superiors about her conduct. The supreme court concluded that the school board's determination that the causes were not remediable was clearly not against the manifest weight of the evidence and upheld the decision of the board removing the teacher.

In *Aulwurm*, the charges against the plaintiff consisted of failure to perform certain assigned tasks and failure to follow stated directions of his superiors or policies of the district. The supreme court recited the definitive language of *Gilliland* and concluded that the causes there were remediable as a matter of law.

In *Gilliland*, the plaintiff had contended that the failure of a teacher to exercise proper discipline was a remediable cause, but the opinion noted that only the case of *Smith v. Board of Education* (1958), 19 Ill. App. 2d 224, 153 N.E.2d 377 (abstract), had so held. The other cases cited by that plaintiff were stated to have been decided for other reasons.

The disciplinary shortcomings of the instant plaintiff are somewhat similar to those of the plaintiff in *Gilliland*. The instant case differs from that case in one important respect, however. There the causes were shown to have existed for a period of 4 years. Here the evidence of causes covered a period of only 4 months. The *Gilliland* opinion relied in part upon the length of time that the causes had existed.

The heart of the *Gilliland* decision, nevertheless was that causes for dismissal are not remediable if (1) they have damaged the pupils, faculty or school, and (2) the conduct which caused the damage could not have been corrected had proper warnings been issued.

Here the board could easily have found that the pupils had been damaged because the disruption in the seventh grade classes and study hall had severely impaired the opportunities of those pupils to learn for nearly half of a school year. Plaintiff's negative attitude toward helping the pupils may also have damaged their attitude toward school.

The question of whether the plaintiff's conduct could have been corrected if the statutory warnings had been given is more difficult. Substantial evidence was presented indicating that plaintiff continually lost his temper and on several occasions, while in anger, used excessive physical force. On other occasions, he apparently gave up and made no attempt to maintain control of the pupils. His defeatist attitude appeared

to prevent him from giving the pupils the help to which they were entitled. Although various memoranda were sent to plaintiff by his superiors and conferences with him were held, he was unable to change the situation in the classroom. The expert witness in *Gilliland* stressed that the teacher's conduct there appeared to be compulsive. The board could have reached the same conclusion as to plaintiff's conduct here.

At the hearing, a recording was presented of a question and answer interview between plaintiff's attorney and a teacher who had been an administrator in defendant district. In answer to a hypothetical question premised upon a report by the principal of plaintiff's difficulties with his classes, the teacher stated the opinion that plaintiff's difficulties in disciplining his classes were remediable. Because of the apparently compulsive nature of plaintiff's conduct, however, the board could have disagreed. Indeed, in view of plaintiff's inability to correct the situation after his numerous discussions with his superiors, it is difficult to see how he could have done so after getting formal notice from the board. Rather, it would appear to be more likely that the formal notice would only have made him more irritable and compulsive. We deem the evidence sufficient for the board to have decided that formal notice would not have enabled plaintiff to correct the causes that made him unable to control the pupils.

■■ The board's determination that the causes were irremediable was not contrary to the manifest weight of the evidence.

■■■ Plaintiff also raises a number of due process issues. Plaintiff's argument that the dismissal procedure of section 24—12 of the School Code is unconstitutional because the board acts as prosecutor, judge and jury has been answered by the opinion in *Gilliland.* The Supreme Court adopted the ruling in *Hortonville Joint School District No. 1 v. Hortonville Education Association* (1976), 426 U.S. 482, 49 L. Ed.2d 1, 96 S. Ct. 2308, that such a procedure of itself does not violate due process. Plaintiff argues that certain members of the board were biased against him and had already decided before the hearing how to vote on the question of his dismissal. The fact that a decisionmaker has taken a position on an issue prior to the hearing does not disqualify him as a decisionmaker unless there is some showing that he is not capable of judging a particular controversy on the basis of the relevant facts and circumstances (*Federal Trade Com. v. Cement Institute* (1948), 333 U.S. 683, 701, 92 L. Ed. 1010, 1034, 68 S. Ct. 793.) There is a strong presumption of honesty and integrity in those serving as adjudicators. (*Withrow v. Larkin* (1975), 421 U.S. 35, 43 L. Ed. 2d 712, 95 S. Ct. 1456.) We do not believe the record shows that the board was incapable of giving plaintiff a fair hearing.

■■ Plaintiff also argues that he was denied a fair hearing because the

attorney for the board acted as both prosecutor and advisor to the board. Under the procedure whereby the hearing was before the board, the better practice would have been for the board to hire a separate attorney to advise it on legal and procedural aspects of the hearing. However, the record does not show that the conduct of the board's attorney violated plaintiff's right to a fair hearing. The board's attorney did not participate in the board's deliberations and decision. Although the board's rulings on evidentiary questions were consistent with the position advocated by the board's attorney, on several occasions he admitted that the defendant's objection was correct and withdrew or rephrased the pertinent question.

■■ Plaintiff also argues that the charges listed in the notice of dismissal and bill of particulars were not sufficiently specific because the charges did not refer to particular incidents, dates, or names. We believe the language of the notice and bill of particulars was sufficient to fairly apprise the teacher of the alleged deficiencies upon which the board based its action and to enable plaintiff to prepare his defense. *Wade v. Granite City Community Unit School District No. 9* (1966), 71 Ill. App. 2d 34, 36, 218 N.E.2d 19, 20.

■■■ Plaintiff also contends that the board did not comply with the procedural requirements of the statute. Plaintiff argues that the board did not vote to dismiss him and that the notice he received was not valid because the minutes of the board meeting do not show that anyone was authorized to so notify him. The board's vote "not to rehire" plaintiff for the following school year can be interpreted as a vote to dismiss plaintiff effective at the close of the current school year. The notice sent to plaintiff was signed by the president of the board and the superintendent and purported to be sent at the request of the board. The fact that it was sent by the president of the board after the board's vote "not to rehire" plaintiff was sufficient to comply with the statutory requirement.

■■ Plaintiff contends that the board lost jurisdiction to dismiss him because it failed to hold the hearing and render its decision prior to the effective date of the dismissal as required by section 24—12 of the School Code. That argument was rejected in *Miller v. Board of Education* (1962), 37 Ill. App. 2d 451, 186 N.E.2d 790, and we agree that the statutory time limit is not jurisdictional, but may be waived by the plaintiff teacher. In the instant case, plaintiff's counsel agreed that the hearing could continue beyond the effective date of the dismissal and did not raise this issue until the final hearing just before the board retired to deliberate.

Plaintiff relies on *Szkirpan v. Board of Education* (1975), 29 Ill. App. 3d 1047, 331 N.E.2d 863, where the court ruled that the board lost jurisdiction of the subject matter because the board rendered its decision

more than 80 days after the final hearing. The court distinguished the decision in *Miller* on the basis that some of the delay there was caused by the teacher. Although we do not agree that the statutory time limit is jurisdictional, we find that the instant case is readily distinguishable from *Szkirpan* because here, some of the delay was attributable to plaintiff.

■■  Finally, plaintiff argues that the board violated his right to a public hearing by taking final action on his dismissal in closed session. Section 2 of "An Act in relation to meetings" (Ill. Rev. Stat. 1973, ch. 102, par. 42) permits the board to deliberate in closed session but provides that no final action may be taken in closed session. Here, the board deliberated in closed session, prepared a written motion, voted on it, and individual members signed the resolution. Thereafter, the board returned to open session, plaintiff waived reading the motion, and a roll call vote of the board was taken. In *Jewell v. Board of Education Du Quoin Community Unit Schools, District No. 300*, (1974), 19 Ill. App. 3d 1091, 312 N.E.2d 659, the board followed a similar procedure except that the individual board members did not sign the resolution until after the roll call vote was taken. The court ruled there was no violation of "An Act in relation to meetings," that the statute did not prohibit the board from polling its members in closed session and that the final action of the board was the roll call vote in open session which permitted the public to know the positions taken by the individual board members. Likewise, in the instant case, the board took a roll call vote in open session. That roll call was the board's final action and thus no violation of the statute occurred.

For the reasons stated, the decision of the circuit court of Ford County is affirmed.

Affirmed.

TRAPP and MILLS, JJ., concur.