# Illinois Official Reports

## Appellate Court

***Board of Education of Springfield School District No. 186 v. Attorney General*,**
**2015 IL App (4th) 140941**

| | |
|---|---|
| Appellate Court Caption | BOARD OF EDUCATION OF SPRINGFIELD SCHOOL DISTRICT NO. 186, Plaintiff-Appellee, v. THE ATTORNEY GENERAL OF ILLINOIS, Defendant-Appellant, and MOLLY BECK, Defendant. |
| District & No. | Fourth District<br>Docket No. 4-14-0941 |
| Filed | December 15, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 13-MR-524; the Hon. Steven H. Nardulli, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Chicago (Carolyn E. Shapiro, Solicitor General, and John P. Schmidt (argued), Assistant Attorney General, of counsel), for appellant.<br><br>Lorilea Buerkett (argued), of Brown, Hay & Stephens, LLP, of Springfield, for appellee.<br><br>Roger Huebner, of Illinois Municipal League, of Springfield, for *amicus curiae* Illinois Municipal League.<br><br>James A. Petrungaro, of Scariano, Himes & Petrarca, Chtrd., of Chicago, for *amici curiae* Illinois Association of School Boards *et al.* |

Panel                JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Harris and Appleton concurred in the judgment and opinion.

## OPINION

¶ 1       During a March 2013 public meeting, plaintiff, the Board of Education of Springfield School District No. 186 (Board), voted to terminate the employment of its superintendant, Dr. Walter Milton, Jr. In May 2013 and April 2014, defendant, the Attorney General of Illinois (AG)–acting on allegations raised by defendant, Molly Beck–issued two binding opinions in which the AG ultimately concluded that the Board failed to comply with the Open Meetings Act (Act) (5 ILCS 120/1 to 7.5 (West 2012)) when it terminated Milton's employment.

¶ 2       In June 2013, the Board sought administrative review of the AG's conclusions that the Board (1) terminated Milton's employment by impermissibly taking final action during a closed Board session and (2) failed to adequately inform the public of Milton's proposed termination prior to a subsequent public meeting. In November 2013 and September 2014, respectively, the trial court reversed both of the AG's conclusions, finding that the Board's termination action complied with the Act.

¶ 3       The AG appeals, arguing that she properly concluded that the Board failed to comply with the Act. We disagree and affirm the trial court's judgment.

¶ 4                               I. BACKGROUND

¶ 5       In November 2012, Milton sent a letter to the Board inquiring about terminating his employment contract. Thereafter, the Board and Milton reached an agreement on the terms of his contractual release. On January 31, 2013, Milton signed and dated a 19-page "Separation Agreement and Release" (Agreement). The Agreement set forth, among other matters, compensation, health-care coverage, and the parties' respective obligations with regard to Milton's scheduled March 31, 2013, resignation.

¶ 6       During a portion of the February 4, 2013, meeting that was not open to the public, six of the Board's seven members signed the Agreement but did not date their signatures. On March 1, 2013, the Board published an agenda and the entire Agreement on the "Springfield Public Schools Electronic School Board" website. This posting was four days prior to the scheduled March 5, 2013, public meeting. See Springfield Public Schools, Agenda Public (Mar. 5, 2013), http://esbpublic.springfield.k12.il.us/ (posting the agenda and the entire Agreement–which included the aforementioned signatures–on the Board's website calendar).

¶ 7       The agenda for the March 5, 2013, public meeting listed numerous items that the Board was scheduled to consider. The first item under the heading, "Roll Call Action Items," was item 9.1, entitled, "Approval of a Resolution regarding the *** Agreement *** Between Superintendant *** Milton *** and the Board." At the March 2013 public meeting, the Board's president introduced that agenda item, as follows:

> "I have item 9.1, approval of a resolution regarding the *** Agreement. The Board president recommends that the Board *** vote to approve the *** Agreement between *** Milton *** and the Board."

Thereafter, the Board (1) approved the Agreement by a six-to-one vote and (2) added the date March 5, 2013, to the signatures of the six approving Board members.

¶ 8 In June 2013, Beck, acting on behalf of the local newspaper, the *State Journal Register*, sent an e-mail message to the AG's public access counselor (PAC), alleging that the Board violated the Act. Specifically, Beck asserted, as follows:

"On [January] 31, 2013, members of the *** Board *** signed a separation agreement *** with the district's superintendant, *** Milton. The Board signed this agreement, which includes terms of compensation, without taking a public vote beforehand. *** [A] signed agreement is an approved agreement, and signing the agreement before voting publically violates the *** Act, prompting this request for review."

(Contrary to Beck's assertion and as previously noted, Milton signed the Agreement on January 31, 2013, and six of seven Board members signed the Agreement on February 4, 2013, which the Board later postdated March 5, 2013.)

¶ 9 Following an investigation, the AG issued a binding opinion in May 2013, concluding, in pertinent part, as follows:

"(8) *** The signing of the *** Agreement by six of the Board's seven members during the February 4, 2013, closed session *** did constitute the taking of a final action in violation of section 2(e) of [the Act (5 ILCS 120/2(e) (West 2012))].

(9) Assuming *arguendo*, that the Board could have effectively ratified its improper final action by voting on the separation agreement at a properly noticed open meeting, the Board would nonetheless have violated section 2(e) of [the Act] by voting to approve the *** Agreement at its March 5, 2013, meeting because it failed to adequately inform the public of the nature of the matter under consideration or the business being conducted."

¶ 10 In June 2013, the Board filed a complaint for administrative review under section 7.5 of the Act (5 ILCS 120/7.5 (West 2012)), challenging the AG's aforementioned conclusions. Following a hearing on the Board's complaint, the circuit court entered an order in November 2013, finding that the AG erred by concluding that the Board took "final action" when six Board members signed the Agreement during a February 4, 2013, closed session. The court determined, instead, that the Board's final action occurred on March 5, 2013, when the Board members voted to approve the Agreement during the public meeting. The court declined to reach the merits of the AG's conclusion regarding the inadequacy of the Board's efforts to inform the public of the Agreement prior to that public meeting, opting, instead, to remand the matter so that the Board could respond to that claim.

¶ 11 In April 2014–after the parties complied with the circuit court's order–the AG issued a second binding opinion, concluding, in pertinent part, as follows:

"The [AG] finds that the Board violated section 2(e) of [the Act] by voting to approve the *** Agreement during its March 5, 2013, meeting without adequately informing the public of the business being conducted. The [AG] concludes that the Board's posting of the *** Agreement on its website did not constitute a public recital during an open meeting within the scope of section 2(e) of [the Act]. Further, the few comments made during the discussion leading to the vote were insufficient to provide the public with information from which it might comprehend the purpose and effect of the Board's action."

¶ 12 After the AG issued its second binding opinion, the matter returned to the circuit court. In September 2014, the court entered an order reversing the AG's second binding opinion, reasoning, in part, as follows:

"The [AG's] opinion significantly expands the requirements of the *** Act, changing the requirement of public notice from advising of the nature of the final action to be taken to a requirement that the public body explain the significance of the final action to be taken. There is no authority which would support such an expansion of the requirements of section 2(e) of the *** Act."

¶ 13 This appeal followed.

¶ 14                                    II. ANALYSIS
¶ 15                      A. The Applicable Portions of the Statute at Issue
¶ 16 Section 1 of the Act provides, as follows:

"Policy. It is the public policy of this State that public bodies exist to aid in the conduct of the people's business and that the people have a right to be informed as to the conduct of their business. In order that the people shall be informed, the General Assembly finds and declares that it is the intent of this Act to ensure that the actions of public bodies be taken openly and that their deliberations be conducted openly.

The General Assembly further declares it to be the public policy of this State that its citizens shall be given advance notice of and the right to attend all meetings at which any business of a public body is discussed or acted upon in any way." 5 ILCS 120/1 (West 2012).

¶ 17 Section 2(c) of the Act delineates numerous exceptions that permit closed sessions under narrowly construed circumstances. See 5 ILCS 120/2(c) (West 2012). Specifically, section 2(c)(1) of the Act provides the following exception:

"(c) Exceptions. A public body may hold closed meetings to consider the following subjects:

(1) The appointment, employment, compensation, discipline, or dismissal of specific employees of the public body ***." 5 ILCS 120/2(c)(1) (West 2012).

¶ 18 Section 2(e) of the Act provides, as follows:

"Final Action. No final action may be taken at a closed meeting. Final action shall be preceded by a public recital of the nature of the matter being considered and other information that will inform the public of the business being conducted." 5 ILCS 120/2(e) (West 2012).

¶ 19                            B. The Appropriate Standard of Review
¶ 20 Judicial review pursuant to the Administrative Review Law (735 ILCS 5/3-101 to 3-113 (West 2012)) "requires this court to review all questions of law and fact presented by the record in relation to the administrative agency's decision and not the decision of the *** circuit court." *Senno v. Department of Healthcare & Family Services*, 2015 IL App (1st) 132837, ¶ 33. The applicable standard of review depends on whether the issue involves a question of fact, a question of law, or a mixed question of law and fact. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204, 692 N.E.2d 295, 302 (1998).

¶ 21       In *City of Champaign v. Madigan*, 2013 IL App (4th) 120662, ¶¶ 25-26, 992 N.E.2d 629, this court outlined the following differing standards of review:

> "An agency's findings and conclusions of fact are deemed *prima facie* true and correct and will be overturned only if they are against the manifest weight of the evidence. [Citation.] A determination is against the manifest weight of the evidence if the opposite conclusion is clearly evident. [Citation.]

> [W]here the historical facts are admitted or established, the controlling rule of law is undisputed and the issue is whether the facts satisfy the statutory standard, the case presents a mixed question of fact and law for which the standard of review is clearly erroneous. [Citation.] An agency's decision is clearly erroneous when the reviewing court is left with a firm and definite conviction that the agency has committed a mistake. [Citation.]" (Internal quotation marks omitted.)

¶ 22       In her brief to this court, the AG asserts that to the extent she interpreted certain statutory provisions of the Act, those interpretations are entitled to substantial weight and deference because of her role in administering and enforcing the Act. However, we note that this court affords an administrative agency such deference when the agency is interpreting an ambiguous statutory provision that it is charged with enforcing. See *Crittenden v. Cook County Comm'n on Human Rights*, 2013 IL 114876, ¶ 19, 990 N.E.2d 1161 ("We 'give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with administering and enforcing that statute.' " (quoting *People ex rel. Birkett v. City of Chicago*, 202 Ill. 2d 36, 46, 779 N.E.2d 875, 881 (2002))).

¶ 23       In this case, the parties' dispute does not concern an ambiguity in the applicable provisions of the Act but, instead, pertains to the propriety of the AG's interpretation of the plain language of section 2(e) of the Act as applied to the aforementioned undisputed facts. In this regard, the supreme court has held that where the historical facts are admitted or established, but a dispute exists "as to whether the governing legal provisions were interpreted correctly by the administrative body, the case presents a purely legal question for which [the] review is *de novo*." *Goodman v. Ward*, 241 Ill. 2d 398, 406, 948 N.E.2d 580, 585 (2011). Because our review concerns whether the AG properly determined that the Board's procedures failed to comply with section 2(e) of the Act, our review is *de novo*, which the supreme court has characterized as "independent and not deferential." (Internal quotation marks omitted.) *Id.*

¶ 24                              C. The Correctness of the AG's Binding Opinions

¶ 25       The AG argues that she properly concluded that the Board failed to comply with the Act. Specifically, the AG contends that the (1) signing of the Agreement during the February 4, 2013, closed session constituted a final action in violation of section 2(e) of the Act and (2) the March 5, 2013, public vote approving the Agreement did not constitute a valid final action because the Board did not adequately inform the public as required by section 2(e) of the Act. We address the AG's contentions in turn.

¶ 26                              1. *The Signing of the Agreement During a Closed Board Session*

¶ 27       In support of her first claim, the AG relies on *Lawrence v. Williams*, 2013 IL App (1st) 130757, 988 N.E.2d 1039, and *Howe v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 2013 IL App (1st) 122446, 996 N.E.2d 664. However, the AG's reliance is misplaced.

¶ 28    In *Lawrence*, a three-member electoral board voted unanimously to invalidate nomination papers for three prospective candidates running for the local school board. *Lawrence*, 2013 IL App (1st) 130757, ¶¶ 4-7, 988 N.E.2d 1039. The electoral board then announced that decision at an "open proceeding." *Id*. ¶ 7. Upon reconvening at a public meeting four days later, one of the board members (1) presented the electoral board's written decision on the matter and (2) announced that the other two board members, who were not present, had already signed the written ruling. *Id*. ¶ 8. The board member then added her approving signature to the written decision and thereafter ended the public meeting. *Id*. On appeal, the appellate court dismissed the case for lack of jurisdiction because no final action had been taken by the electoral board. *Id*. ¶ 23. Specifically, the *Lawrence* court concluded that although the electoral board attempted to comply with section 2(e) of the Act by later taking final action at a public forum on the electoral board's written decision, it lacked a quorum in violation of section 2.01 of the Act (5 ILCS 120/2.01 (West 2010)). *Lawrence*, 2013 IL App (1st) 130757, ¶ 21, 988 N.E.2d 1039. Thus, no final action occurred.

¶ 29    In *Howe*, a retirement board considered a motion to grant the plaintiff's application for a duty-disability benefit. *Howe*, 2013 IL App (1st) 122446, ¶ 2, 996 N.E.2d 664. The retirement board later held an administrative hearing on that application and after considering evidence, recessed into a closed session. *Id*. ¶ 13. After reconvening from the closed session, five of seven board members voted to deny the plaintiff's application. *Id*. The retirement board later provided the plaintiff a written decision, which was back-dated to the day the board voted to deny the plaintiff's application, explaining the basis for its decision. *Id*. ¶ 14. The appellate court reversed the circuit court's ruling–which affirmed the retirement board's determination–concluding, in pertinent part, that the retirement board did not take final action on its written decision as required by section 2(e) of the Act. *Id*. ¶ 2. On remand, the *Howe* court directed the board to "take valid final action by conducting a proper affirmative vote on a specific written decision." *Id*.

¶ 30    In this case, the specific issue before us does not concern the Board's failure to take final action by voting on a written instrument of public interest at a public forum. Indeed, the parties do not dispute that on March 5, 2013, the Board held a public meeting where it voted to approve the Agreement by a six-to-one margin. Instead, the AG's narrow claim focuses on the Board's action at the February 4, 2013, closed session. In this regard, the AG contends that despite the March 5, 2013, public meeting, the Board's final action actually occurred during the February 4, 2013, closed session when six of seven Board members *signed* the Agreement.

¶ 31    The AG's reliance on *Lawrence* and *Howe*, however, militates against that stance. In *Lawrence*, 2013 IL App (1st) 130757, ¶ 21, 988 N.E.2d 1039, the appellate court noted that final actions "had to occur in an open meeting with a quorum present." Similarly, in *Howe*, 2013 IL App (1st) 122446, ¶ 26, 996 N.E.2d 664, the appellate court concluded that "[n]o public body in Illinois subject to the *** Act can take final action by merely circulating some document for signature and not voting on it publicly." In other words, a "final action," as contemplated by the Act, can only occur at a properly conducted public forum where the public entity expresses its opinion–usually in the form of a vote or signature–on a public issue. Thus, we disagree with the AG's interpretation. The Board members' act of signing the Agreement during a closed session could not have constituted a "final action" within the meaning of section 2(e) of the Act. Our conclusion is hardly new or novel.

¶ 32    In *Grissom v. Board of Education of Buckley-Loda Community School District No. 8*, 55 Ill. App. 3d 667, 370 N.E.2d 1298 (1977), *rev'd on other grounds*, 75 Ill. 2d 314, 388 N.E.2d 398 (1979), the school board dismissed a teacher under the following circumstances:

> "[T]he board deliberated in closed session, prepared a written motion, voted on it, and individual members signed the resolution. Thereafter, the board returned to open session, plaintiff waived reading the motion, and a roll call vote of the board was taken." *Id.* at 675, 370 N.E.2d at 1304 (*Grissom I*).

In affirming the circuit court's finding that the aforementioned procedure the school board employed did not violate the Act, we concluded that the roll call was the board's final action and, as a result, no violation of the statute occurred. *Id.*

¶ 33    After granting the plaintiff's petition for leave to appeal in *Grissom I*, the supreme court addressed the plaintiff's claim under the Act, reasoning, as follows:

> "The plaintiff's assertion that the board took final action in closed session in violation of section 2 of the *** Act [citation] must also fail. Section 2 prohibits any final action being taken in closed session. It does not prohibit 'holding closed sessions to consider information regarding appointment, employment or dismissal of an employee.' The record reveals only that the board recessed to draw up the signed findings in closed session. Upon returning to open session, each board member publicly indicated his vote on the dismissal by acknowledging his signature on the findings. This is not in violation of the statutes, and is similar to *Jewell v. Board of Education*[, 19 Ill. App. 3d 1091, 1094-95, 312 N.E.2d 659, 662-63 (1974)], where the board went into executive session, was polled and found to unanimously agree not to rehire a teacher, entertained a motion to that effect, prepared the motion, and returned to open session where the motion was read. Then each member, by roll call, voted in favor of the motion. The appellate court found this consistent with the statute and so do we." *Grissom*, 75 Ill. 2d at 326-27, 388 N.E.2d at 403.

See also *Kosoglad v. Porcelli*, 132 Ill. App. 3d 1081, 1092, 478 N.E.2d 489, 496 (1985) ("[T]he Act allows a public body to consider dismissal matters in a closed session, so long as their final action is taken at an open meeting, as occurred here."); *Jewell*, 19 Ill. App. 3d at 1095, 312 N.E.2d at 663 ("[T]he fact that there were two votes taken, one at the closed and one at the open session, should not be considered a violation of the [Act]. The crucial fact is that the final vote was taken at an open session.").

¶ 34    We conclude that the Board appropriately considered Milton's dismissal at the February 4, 2013, closed session as permitted by section 2(c)(1) of the Act. Accordingly, we reject the AG's contention that the signing of the Agreement during the February 4, 2013, closed Board session constituted an impermissible final action in violation of section 2(e) of the Act.

¶ 35                              *2. The Board's Public Notice*

¶ 36    The AG also contends that the March 5, 2013, public vote approving the Agreement did not constitute a valid final action because the Board did not adequately inform the public as required by section 2(e) of the Act. The AG's contention proceeds in two distinct parts: (1) "the record shows that the Board considered the agreement to be in effect before the purported March 5, 2013, approval at the [public] meeting" and (2) the Board's vote did not constitute a

valid final action because the Board did not adequately inform the public. We disagree with both of the AG's assertions.

¶ 37    As previously noted, section 2(e) of the Act provides, as follows:

"Final Action. No final action may be taken at a closed meeting. Final action shall be preceded by a public recital of the nature of the matter being considered and other information that will inform the public of the business being conducted." 5 ILCS 120/2(e) (West 2012).

¶ 38    To the extent the AG asserts that the Board's subjective belief regarding the effective date of the Agreement applies to an analysis under section 2(e) of the Act, we reject this premise. The AG fails to cite competent authority for this proposition, and even assuming the AG was correct, this court is not bound by the Board's subjective beliefs. The sole issue before us concerns whether the public was adequately informed about the Agreement prior to the Board's March 5, 2013, approval under the plain meaning of section 2(e) of the Act. We conclude that, on this record, the public was so informed.

¶ 39    In this case, the Board's agenda for the March 5, 2013, public meeting was posted to the Board's public website. The first item under the heading, "Roll Call Action Items," was described, as follows: "Approval of a Resolution regarding the *** Agreement *** Between *** Milton *** and the Board." Underneath that description appeared a link to an attachment. Selecting that link transferred the interested party to another portion of the Board's website where the entire Agreement was displayed. The provided Agreement contained the pertinent details regarding the parties' respective duties, rights, and obligations. Interested parties could then view, print, or download the Agreement. At the March 5, 2013, meeting, the president of the Board introduced the Agreement consistent with the general terms of the agenda and recommended that the Board approve the item.

¶ 40    In her brief to this court, the AG posits that the attending public was "ill informed about the nature of [the] business the Board" conducted because "they were not given details about the *** Agreement at the March 5, 2013, meeting." We note that the AG does not support this claim with competent authority or elaborate further as to what additional information the Board could have provided the public that would have constituted sufficient notice under her interpretation of section 2(e) of the Act.

¶ 41    In addition, the AG directs our attention to Public Act 85-1355, which added the final sentence to section 2(e) of the Act. See Pub. Act 85-1355, § 1 (eff. Jan. 1, 1989) (amending Ill. Rev. Stat. 1987, ch. 102, ¶ 42(e)). Specifically, the AG urges this court to consider extrinsic evidence from the amendment's sponsor regarding that legislator's intent. However, when the statutory language is clear and unambiguous–as in this instance–we need not resort to extrinsic evidence to aid our analysis. See *People v. Eppinger*, 2013 IL 114121, ¶ 21, 984 N.E.2d 475 ("Where the statutory language is clear and unambiguous, we will apply the statute as written."). Moreover, on the issue of legislative history, this court has previously stated the following:

" '[L]egislators do not make laws by making speeches on the floor of the legislative chamber or by writing memos for committee meetings. They make laws by majority vote on a specifically worded bill that has been read three times before each house and distributed to each legislator. (Ill. Const. 1970, art. IV, §§ 8(c), (d).) Neither the disclosed nor undisclosed intent of a legislator or lobbyist becomes *law*; only the bill as it reads when passed becomes law.' " (Emphasis in original.) *People v. Ferrell*, 277 Ill.

App. 3d 74, 77, 659 N.E.2d 992, 994-95 (1995) (quoting *Town of the City of Bloomington v. Bloomington Township*, 233 Ill. App. 3d 724, 736, 599 N.E.2d 62, 70 (1992)).

¶ 42     We agree with the circuit court's assessment that the AG's interpretation of section 2(e) of the Act would impose a greater burden than the plain language of the statute requires. As written, section 2(e) of the Act requires that the public entity advise the public about the general nature of the final action to be taken and does not, as the AG claims, require that the public body provide a detailed explanation about the significance or impact of the proposed final action.

¶ 43     Accordingly, we conclude that (1) the AG erred when she concluded that the Board's approval of the Agreement at issue failed to comply with section 2(e) of the Act and (2) the circuit court ruled correctly by reversing the AG's binding opinions.

¶ 44                                    III. CONCLUSION
¶ 45     For the foregoing reasons, we affirm the circuit court's judgment.

¶ 46     Affirmed.