# Illinois Official Reports

## Appellate Court

---

### City of Bloomington v. Raoul, 2021 IL App (4th) 190539

---

| | |
|---|---|
| Appellate Court Caption | THE CITY OF BLOOMINGTON, ILLINOIS; THE BLOOMINGTON CITY COUNCIL; and TARI RENNER, in His Official Capacity as Mayor of the City of Bloomington, Plaintiffs-Appellees, v. KWAME RAOUL, in His Official Capacity as Attorney General of the State of Illinois, and JASON CHAMBERS, in His Official Capacity as McLean County State's Attorney, Defendants (Kwame Raoul, in His Official Capacity as Attorney General of the State of Illinois, Defendant-Appellant). |
| District & No. | Fourth District<br>No. 4-19-0539 |
| Filed<br>Rehearing denied | April 26, 2021<br>May 19, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 17-MR-583; the Hon. Ryan M. Cadagin, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Valerie Quinn, Assistant Attorney General, of counsel), for appellant.<br><br>James G. Fahey and Lisa Harms Hartzler, of Sorling Northrup, of Springfield, for appellees. |

JUSTICE CAVANAGH delivered the judgment of the court, with opinion.
Justices Holder White and Steigmann concurred in the judgment and opinion.


## OPINION

¶ 1     The Bloomington City Council (City Council) held a closed session, citing the litigation exception to the Open Meetings Act (Act) (5 ILCS 120/2(c)(11) (West 2016)), to discuss the termination of an agreement with the Town of Normal (Normal). Defendant Jason Chambers, in his official capacity as McLean County State's Attorney, subsequent to the meeting, filed a request for review with defendant Kwame Raoul, in his official capacity as Attorney General of the State of Illinois (AG), questioning the City Council's use of the litigation exception. The AG, via a binding opinion, determined the City Council did not properly invoke the exception for "probable or imminent" litigation. Further, the AG opined the City Council violated the Act by engaging in discussion not focused on litigation but rather on other matters. Plaintiffs, the City of Bloomington, Illinois (Bloomington), the City Council, and Tari Renner, in his official capacity as Mayor of the City of Bloomington (Mayor), filed a complaint for administrative review of the AG's decision. The circuit court of Sangamon County reversed the AG's binding opinion. For the reasons that follow, we reverse the judgment of the circuit court.

¶ 2                              I. BACKGROUND

¶ 3     In 1986, the communities of Bloomington and Normal entered into an intergovernmental agreement which provided for the sharing of revenue and expenses in an area of the two communities. The agreement purported to bind the parties until cancelled or revised by mutual agreement. In April 2014, Bloomington advised Normal the former objected to the agreement and was paying its share "under protest." In response, Normal asked Bloomington to clarify its concerns.

¶ 4     In November 2016, Bloomington's city manager wrote to Normal's counterpart that Bloomington thought the agreement "outdated *** and not legally binding." The letter advised Normal that the City Council intended to vote on termination of the agreement. The Bloomington manager further expressed Bloomington's desire to collaborate with Normal on termination and a replacement development program, noting, in the letter without further explanation, previous reference to litigation over termination of the agreement. Shortly thereafter, Normal's mayor advised Bloomington's mayor that Normal was "willing to discuss a termination plan." As well during this period, officials of both entities communicated with the public and each other relative to termination of the agreement and how to accomplish that end.

¶ 5     On February 20, 2017, the City Council closed to the public a portion of its meeting to discuss "probable litigation." The closed session continued for 1 hour and 21 minutes, of which the City Council made an audio recording, pursuant to the Act. The Mayor opened the closed session noting the question before the group was "how" the agreement at issue should end. During this introduction of the meeting topic, and after the Mayor completed his comments,

Bloomington's attorney reminded the City Council the body should not discuss in the closed session the above-referenced "how" as noted by the Mayor, but rather confine the discussion to "which option is more or less likely to get the City in or out of litigation."

¶ 6 During the closed session, those attending focused their attention on three areas: (1) the public relations aspects of terminating the agreement, (2) possible approaches to terminating the agreement, and (3) the economics involved with various options and other relationships with Normal.

¶ 7 As to public relations, six of the nine council members expressed concern about how their actions would be perceived by the public. In addition, the Mayor, city manager, and corporation counsel each expressed opinions about this subject. Notably, the city attorney not only warned the group at the commencement of the meeting about discussion of matters other than proper litigation topics, he interjected during the meeting to remind the members again. The phraseology of those attending in discussing the various options included "may result in better public relations," "Normal will savage the City," "politically not palatable," and "we have talking points." Near the end of the meeting, the group discussed timing and an anticipated radio story.

¶ 8 An oft-discussed topic among the closed session participants as well was whether "Option A" or "Option B," a variation of one of these, or another course was preferable. Notably, the options did not include litigation. Option A was a joint resolution with Normal, while Option B was unilateral termination of the agreement by Bloomington. Throughout, the group discussed some manner of communication with Normal's board and whether that could take the form of a joint executive session or would have to take another form. Several individuals mentioned throughout the meeting that the entities regularly collaborated in many areas. Once again, at least six of the nine council members offered comments on the options, in addition to the Mayor, corporation counsel, and the city manager.

¶ 9 Lastly, the group discussed throughout the monetary aspects of the various options and of other relationships with Normal. They discussed the suspension of payments pursuant to the agreement, whether a suspension would cost Bloomington more in the future, the perceived unequal payments Bloomington previously made under the agreement, whether the amount at issue was significant, and which of the options described would be the most economical. Several council members expressed their thoughts as did the mayor and corporation counsel.

¶ 10 As to litigation, neither party had filed suit at the time of the meeting. As for any discussion of litigation, to the extent Bloomington's council considered the issue, the comments fell into three categories: (1) the uncertainty of what a court might do, (2) the options likely to result in litigation, and (3) use by either Bloomington or Normal of the threat of a lawsuit as a negotiating tactic. Compared to the aforementioned primary topics, those attending did not focus much of their time or substance on these litigation related issues. One council member noted there was "no clear cut road as to whether Normal will sue the City." Another characterized any lawsuit as a "minor issue." Bloomington's attorney thought litigation "could be plausible" but it was difficult to determine "the validity of Normal's claim until it has been put into writing." Ultimately, the meeting was bereft of any substantive discussion of possible legal claims, defenses, theories, or postures.

¶ 11 The week after the closed session meeting, the McLean County State's Attorney, Jason Chambers, wrote the AG asking the Public Access Bureau to review Bloomington's closed council session. The AG corresponded further with Chambers and solicited a written response

from Bloomington along with the audio recording and meeting minutes from the closed session. On June 6, 2017, the AG issued a binding opinion that the City Council violated the provisions of the Act in two respects. First, the City Council illegally entered closed session as it did not have "reasonable grounds to believe that a lawsuit was more likely than not to be instituted or was close at hand." Second, the closed session improperly "focused not on the 'strategies, posture, theories, and consequences' of any probable litigation, but rather on the City Council's course of action with respect to the Agreement." The opinion recognized as reasonable the City Council's belief litigation "could at some point result." However, the AG found such belief is insufficient to invoke the closed meeting provisions of the Act, and the AG determined the City Council violated section 2 of the Act by discussing matters outside the scope of the closed meeting exception.

¶ 12    Bloomington, the City Council, and the Mayor sought administrative review of the AG's opinion in the circuit court. After briefing and argument, the circuit court reversed the AG's binding opinion. The AG then appealed.

¶ 13                                II. ANALYSIS

¶ 14                            A. The Open Meetings Act

¶ 15    The policy of the Act is reflected in section 1:

> "Policy. It is the public policy of this State that public bodies exist to aid in the conduct of the people's business and that the people have a right to be informed as to the conduct of their business. In order that the people shall be informed, the General Assembly finds and declares that it is the intent of this Act to ensure that the actions of public bodies be taken openly and that their deliberations be conducted openly.
>
> The General Assembly further declares it to be the public policy of this State that its citizens shall be given advance notice of and the right to attend all meetings at which any business of a public body is discussed or acted upon in any way." 5 ILCS 120/1 (West 2016).

¶ 16    The Act provides for exceptions that permit a body to close a meeting to the public:

> "The exceptions contained in subsection (c) are in derogation of the requirement that public bodies meet in the open, and therefore, the exceptions are to be strictly construed, extending only to subjects clearly within their scope." 5 ILCS 120/2(b) (West 2016).

¶ 17    The exception at issue permits excluding the public to discuss:

> "Litigation, when an action against, affecting or on behalf of the particular public body has been filed and is pending before a court or administrative tribunal, or when the public body finds that an action is probable or imminent, in which case the basis for the finding shall be recorded and entered into the minutes of the closed meeting." 5 ILCS 120/2(c)(11) (West 2016).

¶ 18                            B. Standard of Review

¶ 19    This court previously discussed extensively the applicable standards of review in cases on administrative review. See *Board of Education of Springfield School District No. 186 v. Attorney General*, 2015 IL App (4th) 140941, ¶¶ 20-23. We follow that lead herein.

¶ 20 The Administrative Review Law (735 ILCS 5/3-101 to 3-113 (West 2016)) "requires this court to review all questions of law and fact presented by the record in relation to the administrative agency's decision and not the decision of the *** circuit court." (Internal quotation marks omitted.) *Board of Education of Springfield*, 2015 IL App (4th) 140941, ¶ 20. The proper standard of review "depends on whether the issue involves a question of fact, a question of law, or a mixed question of law and fact." *Id.*

¶ 21 This court has described these varying standards of review as follows:

"An agency's findings and conclusions of fact are deemed *prima facie* true and correct and will be overturned only if they are against the manifest weight of the evidence. [Citation.] A determination is against the manifest weight of the evidence if the opposite conclusion is clearly evident. [Citation.]

[W]here the historical facts are admitted or established, the controlling rule of law is undisputed and the issue is whether the facts satisfy the statutory standard, the case presents a mixed question of fact and law for which the standard of review is clearly erroneous. [Citation.] An agency's decision is clearly erroneous when the reviewing court is left with a firm and definite conviction that the agency has committed a mistake. [Citation.]" (Internal quotation marks omitted.) *City of Champaign v. Madigan*, 2013 IL App (4th) 120662, ¶¶ 25-26.

¶ 22 The AG invites us to defer to his interpretation of the "probable or imminent" litigation terminology of the exception at issue should we find those terms ambiguous, pursuant to *Board of Education of Springfield School District No. 186 v. Attorney General*, 2017 IL 120343, ¶ 23, and the authorities therein. We do not find that these terms are ambiguous and decline that invitation.

¶ 23 Given the plain language of the Act, and the established facts, our review is *de novo*. Our supreme court directs us "that where the historical facts are admitted or established, but a dispute exists as to whether the governing legal provisions were interpreted correctly by the administrative body, the case presents a purely legal question for which [the] review is *de novo*." (Internal quotation marks omitted.) *Board of Education of Springfield*, 2015 IL App (4th) 140941, ¶ 23. Therefore, we review independently the AG's conclusion the City Council violated the Act. *Id.*

¶ 24 The AG contends he correctly concluded the City Council failed to comply with the Act's provisions. Specifically, he argues (1) the City Council held a closed meeting without sufficient grounds to do so pursuant to section 2(c)(11) of the Act, and (2) even if the City Council properly entered a closed session, the City Council violated the Act by failing to discuss probable or imminent litigation. We address these issues in turn.

¶ 25 C. The City Council Entered Closed Session Without Reasonable Grounds
to Believe Litigation Was Probable or Imminent

¶ 26 The Act requires public bodies to hold meetings open to the public subject to enumerated exceptions. 5 ILCS 120/2(a) (West 2016). Such exceptions "are in derogation of the requirement that public bodies meet in the open, and therefore, the exceptions are to be strictly construed, extending only to subjects clearly within their scope." 5 ILCS 120/2(b) (West 2016). The exception at issue permits the closing of a meeting to consider ongoing litigation "or when

the public body finds that an action is probable or imminent." 5 ILCS 120/2(c)(11) (West 2016).

¶ 27   The AG cites in support of his argument *Henry v. Anderson*, 356 Ill. App. 3d 952 (2005). This court therein, where the president of a school board described litigation as "potential," noted as to the litigation exception: "Evidently, the legislature intended to prevent public bodies from using the distant possibility of litigation as a pretext for closing their meetings to the public." *Id.* at 957. Because the Act requires "that the exceptions to the requirement of open meetings are to be strictly construed," the school board's failure to specify the basis for invoking the litigation exception violated the Act. *Id.* at 956-58. In this court's words, the school board invoked the exception "without following through with the conditions attached to that exception." *Id.* at 956.

¶ 28   The AG also relies on prior attorney general decisions interpreting the Act and argues those are entitled to deference as the office is the agency charged with enforcing the Act. As noted above, we find the reliance on those decisions inappropriate, as such deference is only due when the terms of the Act are ambiguous.

¶ 29   The AG's interpretation of the statute is subject to *de novo* review. *Board of Education of Springfield*, 2015 IL App (4th) 140941, ¶ 23.

¶ 30   There was no litigation pending for Bloomington to invoke at the time of the meeting, and thus, that clause of the exception is inapplicable. Further, we find the council members did not reasonably believe that litigation was probable or imminent. For example, Bloomington's attorney advised the group that litigation "could be plausible." The attorney did not know if Normal had a valid claim, as Normal had shared nothing with him. One council member noted there was "no clear cut road" to litigation. Yet another member characterized any possible litigation as a "minor issue." More than one member surmised Normal's threat of a lawsuit could be a "negotiating tactic." The Mayor told the press after the meeting he doubted Normal would file suit. Finally, the gist of the City Council's discussion described elsewhere herein was not of a group that thought litigation was probable or imminent.

¶ 31   We conclude as proper the AG's determination the City Council improperly invoked the litigation exception to enter a closed session, as litigation was not probable or imminent pursuant to section 2(c)(11) of the Act.

¶ 32        D. Even if the City Council Lawfully Entered Closed Session,
             the City Council Violated the Act During the Closed Session
                  as the Focus of the Discussion Was Not Litigation

¶ 33   The Act explicitly requires its exceptions to open meetings "be strictly construed against closed meetings." 5 ILCS 120/1(2) (West 2016). The process for closing a meeting directs that "[o]nly topics specified in the vote to close under this Section may be considered during the closed meeting." 5 ILCS 120/2a (West 2016). And as noted above, when a public body invokes an exception, "the exceptions are to be strictly construed" and extend "only to subjects clearly within their scope." 5 ILCS 120/2(b) (West 2016).

¶ 34   The AG relies on *Henry* and a prior attorney general opinion, in support of his second contention. For brevity, we do not repeat our discussion of these above, but the analysis applies to this issue as well.

¶ 35 We find that even if the City Council lawfully closed the meeting, the City Council violated the Act by failing to abide by the conditions that confined their discussion to probable or imminent litigation. Bloomington's attorney advised the closed meeting attendees at the outset to limit their discussion to litigation and reminded the group subsequently that it should not discuss the public relations aspect in closed session. Nevertheless, the group ignored these admonitions and instead discussed (1) Option A, Option B, and other options to terminate the agreement, none involving litigation; (2) the financial aspects of terminating; and (3) how to peddle the issues to their constituents. The language the council members utilized covered the gamut of terms evidencing the concern for how to best handle inquiries and criticism. They also discussed how to modify Options A and B and whether there were better options.

¶ 36 Further, the great majority of the council members participated in the discussion of these topics, as did their leadership and counsel. Absent from the closed session was any discussion of legal theories, defenses, claims, or possible approaches to litigation. The commentary that did concern litigation related to (1) concern about the uncertainty of any outcome, (2) how to best avoid a lawsuit, and (3) whether Bloomington or Normal had or could use the threat of litigation in the course of negotiation.

¶ 37 On this record, we cannot conclude the City Council limited its discussion to topics within the scope of the litigation exception as required by the Act. The only court the group seemed concerned with was the court of public opinion. The AG correctly determined the City Council exceeded the scope of the litigation exception to the Act (see 5 ILCS 120/2(c)(11) (West 2016)), thereby violating the Act's provisions.

¶ 38                                    III. CONCLUSION

¶ 39 For the foregoing reasons, we reverse the circuit court's judgment reversing the AG's binding opinion.

¶ 40 Reversed.