# Illinois Official Reports

## Supreme Court

---

**Board of Education of Springfield School District No. 186 v. Attorney General,**
**2017 IL 120343**

---

Caption in Supreme Court:    THE BOARD OF EDUCATION OF SPRINGFIELD SCHOOL DISTRICT NO. 186, Appellee, v. THE ATTORNEY GENERAL OF ILLINOIS, Appellant.

Docket No.    120343

Filed    January 20, 2017

Decision Under Review    Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Sangamon County, the Hon. Steven H. Nardulli, Judge, presiding.

Judgment    Circuit court affirmed.
Appellate court affirmed.

Counsel on Appeal    Lisa Madigan, Attorney General, of Springfield (Carolyn E. Shapiro and David L. Franklin, Solicitors General, and John P. Schmidt, Assistant Attorney General, of Chicago, of counsel), for appellant.

Lorilea Beurkett, of Brown, Hay & Stephens, LLP, of Springfield, for appellee.

James A. Petrungaro and Kevin B. Gordon, both of Scariano, Himes & Petrarca, Chtrd., of Chicago, for *amici curiae* Illinois Association of School Boards *et al.*

Jessica DeWalt, of Springfield, for *amicus curiae* Illinois Municipal League.

Justices          JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Freeman, Thomas, Kilbride, Burke, and Theis concurred in the judgment and opinion.

## OPINION

¶ 1      On administrative review, the circuit court of Sangamon County reversed the Attorney General's binding opinion finding violations of the Open Meetings Act (Act) (5 ILCS 120/1 *et seq.* (West 2012)). The appellate court affirmed the judgment of the circuit court. 2015 IL App (4th) 140941.

¶ 2      This court granted the Attorney General's petition for leave to appeal pursuant to Illinois Supreme Court Rule 315 (eff. Jan. 1, 2015). The Illinois Association of School Boards, Illinois Association of School Administrators, and Illinois Association of School Business Officials filed an *amicus curiae* brief pursuant to Illinois Supreme Court Rule 345 (eff. Sept. 20, 2010), as did the Illinois Municipal League.

¶ 3      For the reasons that follow, we affirm the judgment of the appellate court.

¶ 4                    BACKGROUND

¶ 5      Beginning in November 2012, the Board of Education of Springfield School District No. 186 (Board) met in several closed sessions to discuss the possibility of entering into a separation agreement with the then-superintendent of schools, Dr. Walter Milton, Jr. At the January 31, 2013, closed meeting, Milton signed and dated a proposed agreement.

¶ 6      At a closed session during the February 4, 2013, meeting, six of the seven board members signed the agreement but did not date it. At that meeting and on several later occasions, the Board's attorney explained to the Board members that they would have to take a public vote on the agreement but that they were bound by its terms not to publicly disclose the details of their discussions or to publicly discuss the terms of the agreement.

¶ 7      On February 21, 2013, Ms. Molly Beck, a reporter for the State Journal-Register, filed a request for review with the Public Access Counselor in the Office of the Illinois Attorney General, pursuant to section 3.5 of the Act (5 ILCS 120/3.5(a) (West 2012)), requesting review of alleged violations of the Act, including the signing of the separation agreement without first conducting a public vote to approve it.

¶ 8        While this matter was pending, the Board announced the agenda for a public meeting to be held on March 5, 2013. On March 1, 2013, the Board posted the agenda on its website. Under the heading "Roll Call Action Items," the online agenda listed item 9.1, "Approval of a Resolution regarding the Separation Agreement and Release between Superintendent Dr. Walter Milton, Jr., and the Board of Education." Clicking on this link led to a screen containing the resolution, which stated: "The Board President recommends that the Board of Education of Springfield School District No. 186 vote to approve the Separation Agreement and Release between Dr. Walter Milton Jr. and the Board of Education." This item contained a link to the separation agreement itself, containing the signature of Dr. Milton, dated "1/31/13," and the undated signatures of six of the seven Board members.

¶ 9        At the March 5, 2013, public meeting, the Board president introduced the agenda item by stating: "I have item 9.1, approval of a resolution regarding the separation agreement. The Board President recommends that the Board of Education of Springfield School District No. 186 vote to approve the separation agreement and release between Dr. Walter Milton, Jr., and the Board of Education."

¶ 10       The dissenting Board member moved that the matter be tabled, commenting that neither she nor the public were aware of the reasons for taking this action. Her motion was not seconded.

¶ 11       The president's motion was then seconded, and she called for discussion. The dissenting board member spoke in support of Dr. Milton, and another board member thanked him for his service to the school district. The matter was called for a roll call vote, and the resolution was approved by a 6 to 1 vote. The previously signed agreement was then dated March 5, 2013.

¶ 12       After an investigation, the Attorney General issued a binding opinion on May 21, 2013, finding four violations of the Open Meetings Act: (1) the six board members' signing of the agreement at the February 4, 2013, closed session constituted the taking of a final action in violation of section 2(e) of the Act; (2) even if it was permissible to ratify that action by a vote at an open meeting, the Board violated section 2(e) of the Act at the open meeting by failing to "adequately inform the public of the nature of the matter under consideration or the business being conducted"; (3) the Board failed to create and maintain verbatim recordings of three closed sessions, violating section 2.06(a) of the Act; and (4) the Board failed to summarize discussions of the separation agreement in the minutes of five closed meetings, in violation of section 2.06(e)(3) of the Act.

¶ 13       The Board sought administrative review under section 7.5 of the Act (5 ILCS 120/7.5 (West 2012)). The circuit court reversed the Attorney General's conclusion that the Board violated section 2(e) of the Act by unlawfully taking final action on the separation agreement at a closed session, finding that final action was taken at the March 5, 2013, open meeting. The court declined to reach the merits of the issue of the adequacy of the Board's efforts to inform the public and, instead, remanded to the Attorney General for further proceedings to allow the Board to respond to that claim.

¶ 14       In its response, the Board's position was that it satisfied the public recital requirement by posting the resolution and the separation agreement on its website with the agenda for the March 5, 2013, open meeting and by reading the resolution aloud at the open meeting before the vote was taken.

- 3 -

¶ 15 In a second binding opinion issued in April 2014, the Attorney General found that the Board violated section 2(e) of the Open Meetings Act "by voting to approve the separation agreement during its March 5, 2013, meeting without adequately informing the public of the business being conducted," because "the Board's posting of the separation agreement on its website did not constitute a public recital during an open meeting" as required by section 2(e). Specifically:

"[A]t the March 5, 2013, meeting, the Board described the nature of the matter under consideration only in vague, general terms by calling for a vote on a motion to approve a separation agreement with Dr. Milton. The public was given no specific information concerning the separation agreement or its terms. In particular, the public was not informed that the separation agreement included a substantial lump sum payment of public funds."

¶ 16 The opinion further stated that section 2(e) requires public recitation of both the nature of the action to be taken and other information that will inform the public of the business being conducted. "In context," the Attorney General's opinion stated, "this language can only be construed to mean that the public body is required to provide a verbal explanation of the significance of its action to members of the public who are present at the meeting before the public body can proceed to consider taking action." Further, the public recital itself "must be verbal and must take place during the public meeting," and the public body must ensure that "the members of the public in attendance at the meeting receive sufficient 'other information' to understand the business being conducted."

¶ 17 The circuit court again reversed the Attorney General's binding opinion, concluding that the website posting of the agenda adequately informed the public of the nature of the business that was to be conducted at the March 5, 2013, open meeting. Thus, the circuit court ruled, by posting the agreement four days prior to the meeting, the Board "did, in fact, publicly recite the matter being considered prior to taking its roll call vote." In addition, the circuit court rejected the premise that section 2(e) requires "that the public body explain the significance of the final action to be taken."

¶ 18 The appellate court affirmed the judgment of the circuit court, stating that the undated signing of the settlement agreement by six of the seven board members at the closed meeting did not violate section 2(e)'s prohibition on taking final action at a closed meeting. The appellate court further held that the links on the website posting of the agenda together with the Board president's introduction of the agreement "consistent with the general terms of the agenda" was an adequate public recital. The court also observed that section 2(e) does not "require that the public body provide a detailed explanation about the significance or impact of the proposed final action." The appellate court reached these conclusions based on what it found to be the clear and unambiguous language of the statute, rejecting the Attorney General's argument that the legislative history reveals a more expansive legislative intent. 2015 IL App (4th) 140941.

¶ 19                                                    ANALYSIS

¶ 20 The Attorney General, as appellant, raised two issues in the petition for leave to appeal but phrased the issues somewhat differently in the appellant's brief. Reading both documents together, two questions emerge: (1) whether, as a matter of law, the public recital required by

section 2(e) of the Open Meetings Act must include an explanation of the significance of the contemplated action and (2) whether, in this case, the Board violated section 2(e) by failing to satisfy the public recital requirement at the open meeting at which the Board voted to approve the agreement.

¶ 21 *Interpretation of Section 2(e) of the Open Meetings Act*

¶ 22 The first issue requires this court to interpret section 2(e) of the Open Meetings Act to determine what constitutes a sufficient public recital at an open meeting. The parties agree that, in general, the standard of review regarding interpretation of a statute is *de novo* (*Goodman v. Ward*, 241 Ill. 2d 398, 406 (2011)), but the Attorney General nevertheless argues for a substantial degree of deference to her because of her statutory role in administering the Act. The Board argues that no deference is due to the Attorney General.

¶ 23 We conclude that the answer to this dispute depends on whether section 2(e) is ambiguous. This court would give some deference to the Attorney General's interpretation of an ambiguous statute, as she heads the agency charged with the administration and enforcement of the Act. See 5 ILCS 120/3.5 (West 2012); *Crittenden v. Cook County Comm'n on Human Rights*, 2013 IL 114876, ¶ 19. However, if the meaning of section 2(e) is plain, there is no need for statutory construction, and thus, no deference to the agency is due. See *Hadley v. Illinois Department of Corrections*, 224 Ill. 2d 365, 371 (2007) (noting that a court is not bound by an agency interpretation that conflicts with the statute).

¶ 24 The principles guiding our analysis are well established. Our primary objective is to ascertain and give effect to legislative intent, the surest and most reliable indicator of which is the statutory language itself, given its plain and ordinary meaning. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 479 (1994). Where the language of the statute is clear and unambiguous, its meaning is plain, and we must apply it as written without resort to extrinsic aids to statutory construction. *People v. Collins*, 214 Ill. 2d 206, 214 (2005).

¶ 25 If, however, the language used is susceptible to more than one equally reasonable interpretation, it is ambiguous, making construction of the language necessary and permitting resort to other aids of construction to determine legislative intent. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 440 (2010). In doing so, we construe such a statute so that no part of it is rendered meaningless or superfluous (*People v. Jones*, 214 Ill. 2d 187, 193 (2005)) and will not read into it exceptions, limitations, or conditions that conflict with the expressed intent (*People v. Martinez*, 184 Ill. 2d 547, 550 (1998)). In determining the intent of the legislature, we may properly consider not only the language of the statute but also the purpose and necessity for the law, the evils sought to be remedied, and the goals to be achieved. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 280 (2003). Further, when undertaking the interpretation of a statute, we must presume that when the legislature enacted a law, it did not intend to produce absurd, inconvenient, or unjust results. *Vine Street Clinic v. HealthLink, Inc.*, 222 Ill. 2d 276, 282 (2006).

¶ 26 The Open Meetings Act allows a public body, such as the Board, to hold a closed meeting to consider the "appointment, employment, compensation, discipline, performance, or dismissal of specific employees of the public body or legal counsel for the public body, including hearing testimony on a complaint lodged against an employee of the public body or against legal counsel for the public body to determine its validity." 5 ILCS 120/2(c)(1) (West

2012). However, section 2(e) of the Open Meetings Act provides: "No final action may be taken at a closed meeting. Final action shall be preceded by a public recital of the nature of the matter being considered and other information that will inform the public of the business being conducted." 5 ILCS 120/2(e) (West 2012).

¶ 27    The Attorney General argues that the meaning of section 2(e) is plain and that it requires two types of public recital. First, the public body must recite the "nature of the matter being considered." Second, because section 2(e) contains the word "and," the public body must also recite "other information that will inform the public of the business being conducted," 5 ILCS 120/2(e) (West 2012). Under the Attorney General's reading of this phrase, if the public recital does not include "other information" that explains the significance of the matter, it does not comply with the stated legislative intent of the Open Meetings Act: "It is the public policy of this State that public bodies exist to aid in the conduct of the people's business and that the people have a right to be informed as to the conduct of their business." 5 ILCS 120/1 (West 2012). In addition to advocating this interpretation of section 2(e), the Attorney General rejects any suggestion that the posting of an agenda prior to the open meeting is relevant to the question of the adequacy of the public recital at the meeting.

¶ 28    The Board responds that the Attorney General's reading of section 2(e) would impose additional requirements on the public body beyond those imposed by the plain language of the statute. In addition, if the public body were required to explain the significance of the matter under consideration, such a standard would be unworkable in practice for several reasons. First, if a subjective standard were to require actual understanding by the attendees, the body could not take action so long as any attendee disclaimed understanding, leading to an absurd result. Even an objective standard—whether a reasonable person would understand the matter—is unworkable because the body could always provide even more information to improve understanding. Similarly, reading the phrase "and other information" to require that "key terms" of the matter be recited and explained would be time-consuming and fraught with disagreement as to which terms are "key." Finally, the Board argues that the content of the previously posted agenda may be considered as part of the public recital.

¶ 29                    *Compliance With the Agenda Requirement*

¶ 30    Section 2.02 of the Act requires public notice of all meetings of public bodies, whether open or closed to the public. Specifically,

> "[a]n agenda for each regular meeting shall be posted at the principal office of the public body and at the location where the meeting is to be held at least 48 hours in advance of the holding of the meeting. A public body that has a website that the full-time staff of the public body maintains shall also post on its website the agenda of any regular meetings of the governing body of that public body. Any agenda of a regular meeting that is posted on a public body's website shall remain posted on the website until the regular meeting is concluded." 5 ILCS 120/2.02(a) (West 2012).

¶ 31    In this case, the agenda for the March 5, 2013, open meeting was posted on the Board's website four days before the scheduled meeting. It is not clear from the record whether there was also a physical posting at the Board's office or at the location of the meeting, but as neither party has raised this question, we will assume *arguendo* that paragraph (a) of this section was fully complied with.

¶ 32    Section 2.02(c) requires that "[a]ny agenda required under this Section shall set forth the general subject matter of any resolution or ordinance that will be the subject of final action at the meeting." 5 ILCS 120/2.02(c) (West 2012).

¶ 33    The posted agenda not only set forth the general subject matter—approval of a resolution regarding a separation agreement—it specifically identified the individual employee with whom the agreement had been negotiated, and it contained a link to the full text of the agreement itself.

¶ 34    Although the Attorney General expresses concern that not all members of the public have ready access to the Internet, she raises no issue regarding the Board's compliance with section 2.02. She does argue that the mere posting of an agenda in compliance with section 2.02 of the Act is not sufficient to meet the public recital requirement of section 2(e) or to fulfill the purpose expressed in section 1 of the Act, because not all individuals who attend the public meeting will have read the agenda beforehand. Further, she argues, the two separate requirements—posted agenda and public recital—show that the legislature intended for public bodies to conduct meetings in a manner that enables those in attendance to understand the business being conducted even if they have not consulted the agenda beforehand.

¶ 35    We agree with the Attorney General that, because the statute must be read so that no part of it is rendered superfluous (*Jones*, 214 Ill. 2d at 193), an agenda posting standing alone cannot fulfill the public recital requirement of section 2(e).

¶ 36                                   *Meaning of "preceded by"*

¶ 37    The Attorney General argues that the plain language of section 2(e) requires that the public recital take place at the open meeting at which the matter is considered because the recital must immediately precede the business that is "being conducted" at the open meeting. 5 ILCS 120/2(e) (West 2012). A public recital at some previous time would not satisfy this requirement because it would pertain to business that will be conducted in the future, not to business presently being conducted.

¶ 38    The Board does not dispute that a public recital must occur during the open meeting, prior to the public body's taking action on the specific matter. The Board does argue, however, that the content of the previous agenda posting may be taken into account when considering whether the public recital at the meeting is sufficient.

¶ 39    We agree with the parties that in order to comply with section 2(e), the public recital must occur during the open meeting, prior to the public body's taking action on the matter. For reasons that follow, we defer consideration of the relevance, if any, of an earlier public posting of other information regarding the specific item under consideration.

¶ 40            *Meaning of "recital" and "nature of the matter being considered"*

¶ 41    When a court is called upon to determine whether a statutory term has a plain and ordinary meaning, it is appropriate to consult a dictionary. *People v. Perry*, 224 Ill. 2d 312, 330 (2007).

¶ 42    Black's Law Dictionary defines "recital" as "[a]n account or description of some fact or thing." Black's Law Dictionary 1462 (10th ed. 2014). The example given is "the recital of the events leading up to the accident." *Id.* A general use dictionary defines "recital" as "the formal statement or setting forth of some relevant matter of fact in a deed or legal document." Webster's Third New International Dictionary 1895 (1993). Again, an example is provided:

"to explain the reasons for a transaction, to evidence the existence of facts, or to introduce a positive allegation in pleading." *Id.*

¶ 43    Neither of these definitions offers a synonym for the word "recital," and while both of the examples seem to suggest that a "recital" might be expected to include some degree of detail regarding the fact or thing being described, neither definition aids us in deciding what a "public recital of the nature of the matter being considered" must include.

¶ 44    The answer is found in the context in which the word "recital" is used in section 2(e). The public body is required to recite the "nature of the matter being considered," not to summarize the events leading up to consideration of the matter or to explain the reasons for the proposed transaction. The "nature" of a matter is a "fundamental quality that distinguishes one thing from another" or "its essence." Black's Law Dictionary 1190 (10th ed. 2014). See also Webster's Third New International Dictionary 1507 (1993) (defining "nature" as "the essential character or constitution of something").

¶ 45    We, therefore, reject the Attorney General's assertions that "this language can only be construed to mean that the public body is required to provide a verbal explanation of the significance of its action to members of the public who are present at the meeting before the public body can proceed to consider taking action" and that the public body must ensure that "the members of the public in attendance at the meeting receive sufficient 'other information' to understand the business being conducted."

¶ 46    The language of section 2(e) does not mention an explanation, the significance of the action being considered, or the attendees' understanding. Rather, the plain meaning of the phrase "public recital of the nature of the matter being considered" is that the public body must state the essence of the matter under consideration, its character, or its identity.

¶ 47    Because the Attorney General would read into this phrase additional requirements that are not supported by the text, we give no deference to her interpretation of this phrase. Our analysis does not end here, however, because section 2(e) contains additional language.

¶ 48    *Meaning of "and other information that will inform the public*
*of the business being conducted"*

¶ 49    The Attorney General asserts the plain language of section 2(e) mandates that, in making the public recital, the public body must not only state the nature of the matter under consideration but also provide "other information," which must be sufficient to ensure that the attendees understand the business being conducted. While conceding that when the matter under consideration is a contract, it is unworkable to require the public body to read the entire contract or to enumerate all of its terms, the Attorney General argues for a case-by-case consideration of whether the "key terms" of the matter have been publicly recited, applying a reasonable person standard.

¶ 50    Again, reading the words "other information" in context, we find the plain meaning to be that the only additional information required in the public recital is that needed to "inform the public of the business being conducted." Thus, while the "nature of the matter" may be recited in nonspecific terms (the approval of a loan, a contract, a purchase, a policy, or a resolution), "other information" is necessary to inform the public of the specific item of business (the purpose of the loan, the subject of the contract, the type of property being purchased, the title of

the policy, or the purpose of the resolution). The plain language of section 2(e) does not require more than this.

¶ 51   Because the meaning of this phrase is plain and, thus, not in need of interpretation, we give no deference to the Attorney General's reading.

¶ 52                                           *The Case Law*

¶ 53   Aside from the present case, we find only two reported cases considering the meaning of section 2(e). Because the parties bring these cases to our attention, we briefly consider them.

¶ 54   First, prior to the present case, the only reported case considering the adequacy of a "public recital" under section 2(e) was *Roller v. Board of Education of Glen Ellyn School District #41*, No. 05-C-3638, 2006 WL 200886 (N.D. Ill. Jan. 18, 2006). Not only do federal district court cases have no precedential value in Illinois courts (*People ex rel. Ryan v. World Church of the Creator*, 198 Ill. 2d 115, 127 (2001)), this decision is an "unpublished" memorandum opinion and order.

¶ 55   That said, the district court's reasoning is of interest. The plaintiff nontenured teacher filed suit after her contract was not renewed, raising several claims, one of which was an alleged violation of the Open Meetings Act. (Federal jurisdiction was based on alleged federal constitutional and statutory violations.) With regard to the Open Meetings Act, she claimed that the school board failed to publicly recite at an open meeting that it was considering nonrenewal of her contract. *Roller*, 2006 WL 200886, at *4.

¶ 56   The posted agenda stated that the board would be considering "Recommendations for Employment and Dismissal," and the minutes showed that at the open meeting, a motion was made and seconded to "accept the recommendation to release fourth year full-time probationary teachers at the end of the 2004-2005 school year as presented on the attached." *Id.* The plaintiff's name was on the attached resolution. She argued that because she was not named personally in the public recital, it was insufficient to meet the requirements of section 2(e). *Id.*

¶ 57   The district court noted that she did not cite, and it could not find, "a case discussing how specific a public notice must be" to satisfy section 2(e) but concluded that "the Act does not require as much as [plaintiff] demands." *Id.* "Rather, it says only that the Board must recite 'the nature of the matter being considered' and 'inform the public of the business being conducted.' The agenda posted prior to the meeting, together with the recital of the motion passed during the meeting itself, was enough to satisfy the statute." *Id.*

¶ 58   The appellate court was presented with this issue for a second time after deciding the present case. In *Allen v. Clark County Park District Board of Commissioners*, 2016 IL App (4th) 150963, the park district board took action on two items at a regularly scheduled public meeting, after posting the two items on its agenda. *Id.* ¶ 1. The agenda listed only " 'Board Approval of Lease Rates' " and " 'Board Approval of Revised Covenants.' " *Id.* ¶ 4. At the meeting, the "recital" included only a request for a motion to approve the lease rates " 'that came from appraisal' " and a motion to " 'accept the revised covenants.' " *Id.* ¶ 5. After the votes were held, an attendee asked the board to describe what had just been voted upon. The board vice president declined to answer, saying that the items could be viewed only after they " 'get recorded at the courthouse.' " *Id.* ¶ 6.

¶ 59    Plaintiff Allen filed a complaint for injunctive and declaratory relief, claiming violations of the Open Meetings Act, including an insufficient agenda and insufficient public recital at the open meeting. *Id.* ¶¶ 7-9. The circuit court granted the board's motion to dismiss. *Id.* ¶ 11.

¶ 60    The appellate court, citing its own previous decision in the present case and the federal district court's opinion in *Roller*, noted that the "Act provides no explanation about how specifically the public body must describe the 'nature of the matter.' " *Id.* ¶ 28. However, the court concluded that the recitals in this case were insufficient. *Id.* ¶ 29. According to the appellate court, a recital including "key terms" of the proposed lease or covenants would have been sufficient. *Id.* ¶ 30. Despite endorsing a "key terms" approach, the court stated that it would "stand by" its earlier holding in the present case, that the public recital requirement " 'does not *** require that the public body provide a detailed explanation about the significance or impact of the proposed final action.' " *Id.* ¶ 30 (quoting 2015 IL App (4th) 140941, ¶ 42). Further, the court stated, its earlier holding in *Springfield School District* "does not stand for the proposition that the public body may provide no details at all. The overarching concern is whether the recital sufficiently informed the public of the nature of the matter being considered." *Id.*

¶ 61    We agree with the results in both *Roller* and *Allen* and find both consistent with the plain meaning of section 2(e). Because we agree with the Board that identifying key terms would be time consuming and impractical, we reject any suggestion that a public recital of "key terms" is required. A public body may choose to provide such information in its recital at the open meeting but is not compelled to do so by section 2(e).

¶ 62    Finally, although we find the meaning of section 2(e) to be plain, so that resort to other aids of construction is unnecessary, we note that this plain meaning is fully consistent with the "the public policy of this State," as expressed in the Act, "that public bodies exist to aid in the conduct of the people's business and that the people have a right to be informed as to the conduct of their business." 5 ILCS 120/1 (West 2012). The Open Meetings Act ensures "that the actions of public bodies be taken openly and that their deliberations be conducted openly." *Id.* Thus, it is

> "the public policy of this State that its citizens shall be given advance notice of and the right to attend all meetings at which any business of a public body is discussed or acted upon in any way. Exceptions to the public's right to attend exist only in those limited circumstances where the General Assembly has specifically determined that the public interest would be clearly endangered or the personal privacy or guaranteed rights of individuals would be clearly in danger of unwarranted invasion." *Id.*

¶ 63    An entirely separate statute, the Freedom of Information Act (5 ILCS 140/1 *et seq.* (West 2014)), is concerned with public access to information:

> "§ 1. Pursuant to the fundamental philosophy of the American constitutional form of government, it is declared to be the public policy of the State of Illinois that all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees consistent with the terms of this Act." 5 ILCS 140/1 (West 2012).

¶ 64    We, therefore, hold that under section 2(e) of the Open Meetings Act, a public recital must take place at the open meeting before the matter is voted upon; the recital must announce the

nature of the matter under consideration, with sufficient detail to identify the particular transaction or issue, but need not provide an explanation of its terms or its significance.

¶ 65                    *Validity of the Board's Approval of the Separation Agreement*

¶ 66        The Attorney General's brief frames the argument that the separation agreement was not validly approved in two parts: first, the Board could not have taken final action at the closed meeting, and, second, because it did not make an adequate recital at the open meeting, any action taken there was also invalid. Thus, the Attorney General asserts, giving effect to the terms of the agreement without a valid final action was a violation of the Open Meetings Act.

¶ 67        The Attorney General does not offer a standard of review for the application of the statute to the facts of the case. The Board argues for *de novo* review because the facts are not in dispute.

¶ 68        Typically, we review factual findings under the manifest weight of the evidence standard, asking whether the opposite result is clearly evident. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204 (1998). In some cases, however, we employ the clearly erroneous standard when it is not possible to characterize the issue as either a pure question of law or a pure question of fact. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 391 (2001). These mixed questions are those " 'in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated.' " *American Federation of State, County & Municipal Employees, Council 31 v. Illinois State Labor Relations Board, State Panel*, 216 Ill. 2d 569, 577 (2005) (quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19 (1982)). An agency's decision is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been committed. *AFM Messenger*, 198 Ill. 2d at 393.

¶ 69        In the present case, because the question is whether the public recital was sufficiently specific, both factually and legally, to reveal the nature of the matter under consideration, we review for clear error.

¶ 70                                    *The Closed Meeting*

¶ 71        The Board argues that any issue regarding the effect of the vote taken at the closed meeting is forfeited because the question was not raised in the Attorney General's brief, but it acknowledges that whatever happened at the closed meeting cannot, by definition, be a final action.

¶ 72        The Attorney General's reply brief raises this issue, saying that signing the agreement at the closed meeting and "subsequently implementing its terms" constituted an impermissible final action. This argument thus depends on the assertion that the Board failed to make an adequate public recitation before taking its vote at the open meeting. In effect, the Attorney General argues that neither vote at either meeting was an effective final action and that the implementation of the agreement thereafter was illegitimate.

¶ 73        Because the parties agree with the unremarkable principle that final action cannot have been taken at the closed meeting, we find it unnecessary to address the Board's forfeiture argument but note that the statute contains no bar to a public body's taking a preliminary vote at a closed meeting. See, *e.g.*, *Grissom v. Board of Education of Buckley-Loda Community*

*School District No. 8*, 75 Ill. 2d 314, 326-27 (1979) (observing that the Open Meetings Act does not prohibit a board from adjourning to closed session to draw up signed findings and then returning to open session to publicly record individual members' votes on the findings); *Jewell v. Board of Education, Du Quoin Community Unit Schools, District No. 300*, 19 Ill. App. 3d 1091, 1094-95 (1974) (finding no violation of the Open Meetings Act where the board agreed in closed session not to rehire a teacher and prepared a motion to that effect, returned to open session, read the motion, and held a roll call vote, which approved the motion).

¶ 74    Indeed, if a majority of the Board had not been in favor of approving the proposed separation agreement, it would not have been necessary to place the item on the agenda for a public vote. The fact that the Board members in favor of the agreement signed but did not date the agreement at the closed meeting is immaterial. Under the plain language of section 2(e) of the Open Meetings Act, the public vote is not merely a ratification of a final action taken earlier in a closed session; it is the final action. Without the public vote, no final action has occurred. See, *e.g.*, *Lawrence v. Williams*, 2013 IL App (1st) 130757 (finding written decision of electoral board null and void because the decision was not made in an open meeting with a quorum present); *Howe v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 2013 IL App (1st) 122446 (finding board's written denial of benefits invalid in absence of vote in open session).

¶ 75    The Attorney General also argues that because the language requiring a public recital at the open meeting was added to section 2(e) after the decisions in *Grissom* and *Jewell*, the legislature has redefined the term "final action" in the Open Meetings Act.

¶ 76    We disagree. By adding a requirement of public recital to section 2(e), the General Assembly did not alter the meaning of "final action." Rather, it imposed an additional prerequisite to a valid final action in addition to existing prerequisites such as the presence of a quorum (5 ILCS 120/2.01 (West 2012)) and the posting of an agenda (5 ILCS 120/2.02(a) (West 2012)).

¶ 77                          *Sufficiency of the Public Recital*

¶ 78    No violation of the Open Meetings Act occurred if the public recital at the March 5, 2013, public meeting, which preceded the Board's roll call vote on the separation agreement, was sufficient.

¶ 79    In *Allen*, the appellate court concluded that "[w]hatever the standard might be for a public recital, the Board failed to meet it in this case." *Allen*, 2016 IL App (4th) 150963, ¶ 31. The presiding officer of the park district board publicly recited the general nature of the two matters being considered: lease rates and revised covenants. He did not, however, provide sufficient other information to inform the public of the specific business being conducted: What type of real or personal property was being leased? What existing covenants were being revised?

¶ 80    In contrast, the federal district court in *Roller* found the public recital sufficient when it informed attendees of the general nature of the matter under consideration (recommendations for employment and dismissal) and the specific matter under consideration (nonrenewal of employment of full-time probationary teachers completing their fourth year), without identifying the affected teachers by name. *Roller*, 2006 WL 200886, at *4.

¶ 81    Both of these results are consistent with our holding above, and the facts of the present case are more similar to the facts of *Roller* than the facts of *Allen*. The Board president called

agenda item 9.1, "approval of a resolution regarding the separation agreement." She then read the entire text of the resolution itself: "The Board President recommends that the Board of Education of Springfield School District No. 186 vote to approve the separation agreement and release between Dr. Walter Milton, Jr., and the Board of Education."

¶ 82     The Attorney General argues that this recital was insufficient to fulfill the requirements of section 2(e), asserting that the recital should "at least" have included in the public recital the "key terms" of the separation agreement. We rejected a "key terms" requirement above as inconsistent with the plain meaning of the statute. Thus, the question is whether this recital announced the nature of the item under consideration with sufficient detail to identify the particular transaction or issue.

¶ 83     We conclude that it does. The Board president recited the general nature of the matter under consideration—a separation agreement and release—and specific detail sufficient to identify the particular transaction—the separation agreement was between Dr. Milton and the Board. This was sufficient to serve the purpose of the public recitation requirement. It was not necessary for the Board president to publicly read the 16 pages of the agreement and its several addenda or to enumerate "key points" of the agreement, which was one of 17 separate "Roll Call Action Items" on the agenda for the March 5, 2013, meeting.

¶ 84     Because the Attorney General's finding that the public recital was insufficient was based on an incorrect reading of section 2(e), we find clear error. The public recital at the March 5, 2013, meeting was sufficient, and the public vote thereafter validly approved the separation agreement.

¶ 85                                     CONCLUSION

¶ 86     We, therefore, affirm the judgment of the appellate court, and we reach this conclusion without reliance on the contents of the agenda posted prior to the meeting. Therefore, we express no opinion on the propriety of relying on a previously posted agenda to supplement a public recital made at an open meeting of a public body.

¶ 87     Circuit court affirmed.
¶ 88     Appellate court affirmed.

- 13 -