# Illinois Official Reports

## Appellate Court

---

### *Carroll v. Community Health Care Clinic, Inc.*, 2017 IL App (4th) 150847

---

| | |
|---|---|
| Appellate Court Caption | DAVID S. CARROLL, Plaintiff-Appellant, v. COMMUNITY HEALTH CARE CLINIC, INC.; PAUL PEDERSEN, M.D.; and SUE McGINNES, APN, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket Nos. 4-15-0847, 4-16-0667 cons. |
| Filed | June 22, 2017 |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 15-L-59; the Hon. Rebecca S. Foley, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Joseph A. Bartholomew, Stephanie A. Brauer, and Leah A. Captain, of Cook, Ysursa, Bartholomew, Brauer & Shevlin, Ltd., of Belleville, for appellant.<br><br>Jonathan J. Bobell and Christopher L. Nyweide, of Livingston, Barger, Brandt & Schroeder, LLP, of Bloomington, for appellee Community Health Care Clinic, Inc.<br><br>Paul C. Estes and Jesse A. Placher, of Hinshaw & Culbertson LLP, of Peoria, and Adam R. Vaught and Joshua G. Vincent, of Hinshaw & Culbertson LLP, of Chicago, for other appellees. |

Robert J. Kane, of Illinois State Medical Society, of Springfield, and Sherri T. DeVito and Richard R. King II, of Illinois State Medical Society, of Chicago, *amicus curiae*.

Craig L. Unrath, of Heyl, Royster, Voelker & Allen, of Peoria, for *amicus curiae* Illinois Association of Free & Charitable Clinics.

Panel              PRESIDING JUSTICE TURNER delivered the judgment of the court, with opinion.
Justices Pope and Knecht concurred in the judgment and opinion.


**OPINION**


¶ 1        In April 2015, plaintiff, David S. Carroll, filed a medical malpractice complaint against defendants, Community Health Care Clinic, Inc. (Clinic), Paul Pedersen, M.D., and Sue McGinnes, APN. In June 2015, the Clinic filed a motion to dismiss plaintiff's complaint under section 2-619(a)(9) of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/2-619(a)(9) (West 2014)), asserting it was immune from liability (1) as a free and charitable clinic under section 30 of the Good Samaritan Act (745 ILCS 49/30 (West 2004)) and section 31 of the Medical Practice Act of 1987 (Medical Practice Act) (225 ILCS 60/31 (West 2012)) and (2) because any action against it was derivative of plaintiff's action against Dr. Pedersen and McGinnes, who were immune from civil liability. The next month, Dr. Pedersen and McGinnes also filed a section 2-619 motion to dismiss, alleging they were both immune from liability under section 30 of the Good Samaritan Act and Dr. Pedersen was also immune under section 54.5(e) of the Medical Practice Act (225 ILCS 60/54.5(e) (West 2012)). After a September 2015 hearing, the McLean County circuit court granted the motions to dismiss with prejudice, finding (1) McGinnes was immune under the Good Samaritan Act, (2) Dr. Pedersen was immune under the Medical Practice Act, and (3) the Clinic itself was immune from liability under the Good Samaritan Act. Plaintiff appealed the court's dismissal of his medical malpractice action.

¶ 2        In May 2016, plaintiff filed a petition to vacate the circuit court's September 2015 order under section 2-1401 of the Procedure Code (735 ILCS 5/2-1401 (West 2014)), based on a previously unknown employee lease agreement (Lease Agreement) between the Clinic and OSF Healthcare System (OSF), which owns and operates St. Joseph Medical Center, Dr. Pedersen and McGinnes's employer. Plaintiff alleged McGinnes was, in fact, paid for her services to plaintiff through the lease agreement. After an August 2016 hearing, the circuit court denied plaintiff's section 2-1401 petition. Plaintiff appealed the denial of his petition to vacate. In September 2016, this court consolidated plaintiff's two appeals.

¶ 3        In this consolidated appeal, plaintiff argues (1) the Good Samaritan Act does not grant immunity to nonvolunteers like Dr. Pedersen and McGinnes, (2) Dr. Pedersen failed to show he was immune from liability under the Medical Practice Act, and (3) the Clinic is vicariously

liable for Dr. Pedersen's and McGinnes's conduct because neither the Medical Practice Act nor the Good Samaritan Act directly provide the Clinic Immunity. We affirm.

## I. BACKGROUND

Plaintiff's complaint alleged Dr. Pedersen and McGinnes (incorrectly spelled "McGinness" in the trial court pleadings), an advance practice nurse and licensed nurse practitioner, rendered medical services to him at the Clinic on March 13 and April 17, 2013. He also asserted Dr. Pedersen was required to supervise McGinnes when she rendered care and treatment. On May 20, 2013, plaintiff suffered a massive myocardial infarction. Plaintiff alleged Dr. Pedersen and McGinnes were professionally negligent because they negligently and carelessly failed to diagnose and recommend treatment for angina pectoris, coronary artery disease, and coronary insufficiency. As a direct and proximate cause of their negligent actions, plaintiff suffered a myocardial infarction, which caused damage to his heart and his body as a whole. Plaintiff alleged the Clinic was also liable as Dr. Pedersen and McGinnes were its agents, staff, and employees.

In July 2015, the Clinic filed a section 2-619(a)(9) motion to dismiss plaintiff's complaint, asserting it was immune from liability under section 30 of the Good Samaritan Act (745 ILCS 49/30 (West 2004)) and section 31 of the Medical Practice Act (225 ILCS 60/31 (West 2012)). It further argued that, even if it was not directly immune from liability under the aforementioned acts, it was immune because any action against it was derivative of plaintiff's actions against Dr. Pedersen and McGinnes, who were immune from liability. In support of its motion, the Clinic filed a memorandum, which included an affidavit of John Kim, president of the Clinic's board of directors. In his affidavit, Kim stated the Clinic provided free medical care to individuals who were unable to pay for medical care. Plaintiff received free medical care at the Clinic. Attached to Kim's affidavit was a copy of the sign posted in the Clinic notifying clients the healthcare workers were immune from liability under the Good Samaritan Act.

That same month, Dr. Pedersen and McGinnes filed a joint section 2-619(a)(9) motion to dismiss, first contending Dr. Pedersen was immune under section 54.5(e) of the Medical Practice Act (225 ILCS 60/54.5(e) (West 2012)) because he was only a collaborating physician for McGinnes at the time she provided services to plaintiff. The motion further argued McGinnes was immune from liability under section 30(a) of the Good Samaritan Act (745 ILCS 49/30(a) (West 2004)), noting she was in no way compensated by the Clinic for the medical care she provided to plaintiff. Attached to the motion to dismiss were the affidavits of Dr. Pedersen and McGinnes. In his affidavit, Dr. Pedersen testified he did not provide any medical services to plaintiff on March 13 and April 17, 2013, and did not assist McGinnes in any way with respect to the care she provided plaintiff on the dates at issue. He was only a collaborating physician for McGinnes. Additionally, he stated the patients at the Clinic were not charged for the medical care they received. In her affidavit, McGinnes stated Dr. Pedersen did not assist her in any way with respect to the medical care she provided plaintiff on the dates at issue. She also stated she did not receive a fee or compensation from the Clinic for the medical care she provided plaintiff.

Plaintiff filed responses, asserting defendants' arguments failed because they had not demonstrated they were not compensated by any source for the services provided to plaintiff at the Clinic, as required by the Good Samaritan Act, and Dr. Pedersen had failed to show he was

not supervising McGinnes during her treatment of plaintiff. He further argued the plain language of the Good Samaritan Act granted immunity only to individuals and not to the free medical clinics themselves. Defendants filed replies disagreeing with plaintiff's arguments.

¶ 9 On September 29, 2015, the circuit court held a hearing on the motions to dismiss. After hearing the parties' arguments, the court first found the "from that source" language of section 30(a) of the Good Samaritan Act (745 ILCS 49/30(a) (West 2004)) referred to compensation from the free clinic itself. It was undisputed McGinnes was not paid by the Clinic. Thus, the court found she was immune from liability under the Good Samaritan Act. As to Dr. Pedersen, the court concluded it was undisputed that he was not involved in any way in the care of plaintiff at the Clinic. Accordingly, the court found he was immune from liability as a collaborating physician under the Medical Practice Act. Last, the court found section 30(a) of the Good Samaritan Act (745 ILCS 49/30(a) (West 2004)) was not limited to individuals and the Clinic was directly immune from liability under the Good Samaritan Act. That same day, the court entered a written order, dismissing with prejudice the complaint against all three defendants.

¶ 10 On October 19, 2015, plaintiff filed a timely notice of appeal in sufficient compliance with Illinois Supreme Court Rule 303 (eff. Jan. 1, 2015), which is appellate court case No. 4-15-0847. Accordingly, this court has jurisdiction of defendant's appeal from the circuit court's September 2015 order under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994).

¶ 11 On May 26, 2016, plaintiff filed a petition to vacate the circuit court's September 2015 order under section 2-1401 of the Procedure Code. In the petition, plaintiff noted that, on April 4, 2016, he received notice of a June 20, 2002, Lease Agreement between OSF, as owner and operator of St. Joseph Medical Center, and the Clinic. Under the agreement, OSF (lessor) was to provide certain employees for the Clinic (lessee), including a nurse practitioner. As to compensation, the agreement provided the following: "Lessee shall pay to Lessor the productive salary and wages and non-productive wages paid by Lessor to the Leased Employees plus an amount equal to the cost of benefits provided by the Lessor to Leased Employees measured as a percentage of the average wage of the Leased Employees, rounded to the nearest percent ***." OSF was to give the Clinic an invoice at the end of every month for all leased employees who worked during the month. All leased employees were employees of OSF and not the Clinic. Plaintiff again argued Dr. Pedersen and McGinnes were not immune because they received compensation for their work at the Clinic. Plaintiff further contended that, even under the circuit court's interpretation of the Good Samaritan Act, the Lease Agreement indicated the Clinic was the source of McGinnes's compensation, as the compensation was merely routed through OSF. Plaintiff attached a copy of the Lease Agreement to his section 2-1401 petition.

¶ 12 Dr. Pedersen and McGinnes filed a response, arguing the agreement was irrelevant to Dr. Pedersen's immunity because the circuit court found him immune under the Medical Practice Act, not the Good Samaritan Act. Moreover, they argued the Clinic did not compensate McGinnes because she was compensated by OSF, a fact which was not altered by the existence of the Lease Agreement. The Clinic also filed a response, noting the existence of the Lease Agreement had no bearing on the circuit court's dismissal of it from the lawsuit. It further argued the agreement had no impact on Dr. Pedersen's and McGinnes's immunity because they were employees of OSF and, as such, were paid by OSF.

- 4 -

¶ 13    On August 1, 2016, the circuit court held a hearing on plaintiff's section 2-1401 petition. Plaintiff stated he was renewing his arguments against the Clinic and Dr. Pedersen but was not raising a new argument based on the Lease Agreement against them. As to McGinnes, plaintiff argued she was being paid by the Clinic through OSF. That day, the court entered an order denying the section 2-1401 petition as to the Clinic and Dr. Pedersen but taking the petition under advisement as to McGinnes. On August 5, 2016, the court entered an order denying the petition as to McGinnes. The court found McGinnes was compensated by OSF and not the Clinic.

¶ 14    On September 2, 2016, plaintiff filed a timely notice of appeal in sufficient compliance with Illinois Supreme Court Rule 303 (eff. Jan. 1, 2015), seeking to join the appeal in case No. 4-15-0847. On September 20, 2016, this court entered an order, finding plaintiff's notice seeking to join the prior appeal would be considered a notice of appeal from the circuit court's August 5, 2016, order as appellate court case No. 4-16-0667. Moreover, we *sua sponte* consolidated case Nos. 4-15-0847 and 4-16-0667. We note this court also has jurisdiction over defendant's appeal from the circuit court's August 5, 2016, order under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994).

¶ 15                                    II. ANALYSIS
¶ 16                                 A. Standard of Review
¶ 17    Defendant appeals the dismissal of his complaint under section 2-619 of the Procedure Code and the denial of his section 2-1401 petition without an evidentiary hearing. With a section 2-619 motion to dismiss, the movant admits the sufficiency of the complaint but asserts an affirmative matter that defeats the claim. *Leetaru v. Board of Trustees of the University of Illinois*, 2015 IL 117485, ¶ 40, 32 N.E.3d 583. Specifically, section 2-619(a)(9) provides for dismissal when the claim "is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2014). The existence and preclusive effect of immunity is one such affirmative matter. See *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 115, 896 N.E.2d 232, 235 (2008) (addressing immunity under the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1-101 *et seq.* (West 2002))). "The defendant bears the initial burden of proof of the affirmative matter and, if satisfied, the burden shifts to the plaintiff to show that 'the defense is unfounded or requires the resolution of an essential element of material fact before it is proven.' " *Mondschein v. Power Construction Co.*, 404 Ill. App. 3d 601, 606, 936 N.E.2d 1101, 1106 (2010) (quoting *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116, 619 N.E.2d 732, 735 (1993)). In ruling on a section 2-619 motion to dismiss, the circuit court must interpret all pleadings and supporting documents in the light most favorable to the nonmovant. *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 18, 53 N.E.3d 1. We review *de novo* the grant of a section 2-619 motion to dismiss. *Richter*, 2016 IL 119518, ¶ 18, 53 N.E.3d 1. Moreover, when a circuit court enters judgment on the pleadings of a section 2-1401 petition without holding an evidentiary hearing, the standard of review is also *de novo*. *Cavalry Portfolio Services v. Rocha*, 2012 IL App (1st) 111690, ¶ 9, 979 N.E.2d 930.

¶ 18    Additionally, we note this court may affirm the circuit court's granting of a motion to dismiss on any basis or ground established by the record, regardless of the circuit court's reasoning. *Guinn v. Hoskins Chevrolet*, 361 Ill. App. 3d 575, 586, 836 N.E.2d 681, 691 (2005). The same holds true for a circuit court's decision on a section 2-1401 petition. See *Padilla v.*

*Vazquez*, 223 Ill. App. 3d 1018, 1027, 586 N.E.2d 309, 315 (1991).

¶ 19                                    B. Good Samaritan Act

¶ 20        Plaintiff contends section 30(a) of the Good Samaritan Act (745 ILCS 49/30(a) (West 2004)) does not provide immunity to Dr. Pedersen and McGinnes because that section only applies to medical professionals who do not receive any fee or compensation for the services they provide at free clinics. In his supplemental brief, plaintiff further asserts that, under the Lease Agreement between OSF and the Clinic, McGinnes was, in fact, compensated by the Clinic for her services rendered there. Dr. Pedersen and McGinnes assert that section 30(a) applies to medical professionals who provide services at a free clinic and do not receive compensation from the free clinic for those services.

¶ 21                            1. *Applicable Version of Section 30*

¶ 22        Here, the alleged negligence occurred in March and April 2013, which is before Public Act 98-214 (Pub. Act 98-214, § 115, eff. Aug. 9, 2013) became effective. Throughout his briefs, plaintiff cites the version of section 30 that was amended by Public Act 94-677 (Pub. Act 94-677, § 340 (eff. Aug. 25, 2005)), which became effective on August 25, 2005. However, in *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 250, 930 N.E.2d 895, 914 (2010), our supreme court found Public Act 94-677 invalid and void in its entirety. The version of section 30 in effect before Public Act 94-677 was last amended by Public Act 90-742 (Pub. Act 90-742, § 40 (eff. Aug. 13, 1998)). Accordingly, we apply the version of section 30 amended by Public Act 90-742. See 745 ILCS 49/30(a) (West 2004).

¶ 23        Section 30(a) of the Good Samaritan Act (745 ILCS 49/30(a) (West 2004)) provides the following:

> "A person licensed under the Medical Practice Act of 1987, a person licensed to practice the treatment of human ailments in any other state or territory of the United States, or a health care professional, including but not limited to an advanced practice nurse, physician assistant, nurse, pharmacist, physical therapist, podiatrist, or social worker licensed in this State or any other state or territory of the United States, who, in good faith, provides medical treatment, diagnosis, or advice as a part of the services of an established free medical clinic providing care to medically indigent patients which is limited to care that does not require the services of a licensed hospital or ambulatory surgical treatment center and who receives no fee or compensation from that source shall not be liable for civil damages as a result of his or her acts or omissions in providing that medical treatment, except for willful or wanton misconduct."

At issue is the meaning of the language "who receives no fee or compensation from that source."

¶ 24                                 2. *Statutory Construction*

¶ 25        When presented with an issue of statutory construction, the reviewing court's primary objective is to ascertain and give effect to the legislature's intent. *Murphy-Hylton v. Lieberman Management Services, Inc.*, 2016 IL 120394, ¶ 25, 72 N.E.3d 323. The statutory language, given its plain and ordinary meaning, best indicates the legislature's intent. *Murphy-Hylton*, 2016 IL 120394, ¶ 25, 72 N.E.3d 323. Moreover, we must evaluate the statute as a whole,

"construing words and phrases in context to other relevant statutory provisions and not in isolation." *Murphy-Hylton*, 2016 IL 120394, ¶ 25, 72 N.E.3d 323. In doing so, we should not render any language superfluous. *Murphy-Hylton*, 2016 IL 120394, ¶ 25, 72 N.E.3d 323. Where the statute's language is clear and unambiguous and its meaning is plain, we must apply the statute as written without resort to extrinsic aids of statutory construction. *Board of Education of Springfield School District No. 186 v. Attorney General of Illinois*, 2017 IL 120343, ¶ 24. We note the standard of review for statutory construction is also *de novo*. *Board of Education of Springfield School District No. 186*, 2017 IL 120343, ¶ 22.

¶ 26    Plaintiff argues "from that source" means from the performance of the medical services. McGinnes and Pedersen contend the language refers to compensation from the free medical clinic. We begin our analysis by breaking down the language of the provision.

¶ 27    After describing what medical practitioners are immune under the provision, section 30(a) bifurcates into the requirements for the application of immunity. The first part requires the person to "in good faith, provide[ ] medical treatment, diagnosis, or advice." 745 ILCS 49/30(a) (West 2004). It then adds on qualifications for the provision of that care. Specifically, the services must be (1) part of an established free medical clinic providing care to the medically indigent and (2) limited to care that does not require the services of a licensed hospital or ambulatory surgical treatment center. 745 ILCS 49/30(a) (West 2004). The second part mandates the person "receive[ ] no fee or compensation from that source." 745 ILCS 49/30(a) (West 2004). Additionally, the end of the section contains an exception to the immunity for willful or wanton misconduct. Thus, section 30(a) contains two main requirements for receiving immunity; the medical practitioner (1) must perform the services as described by the statute and (2) not receive a fee or compensation from that source. Plaintiff's interpretation of "from that source" renders the "from that source" language superfluous. If the legislature intended for the compensation to be for the performance of those services, the bifurcated structure of the provision would have made that clear—performance of services and no fee or compensation. Accordingly, plaintiff's interpretation is erroneous as statutes are to be construed in a manner that does not render any language superfluous. *Board of Education of Springfield School District No. 186*, 2017 IL 120343, ¶ 24.

¶ 28    As to the plain language of the statute, Black's Law Dictionary defines "source" as "[t]he originator or primary agent of an act, circumstance, or result <she was the source of the information> <the side business was the source of income>." Black's Law Dictionary (10th ed. 2014). The prepositional phrase "from that source" modifies the preceding nouns "fee or compensation." The originator or primary agent of a fee or compensation is the entity from which the person received payment. The use of the word "that" indicates "the kind or thing specified as follows." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/that (last visited June 9, 2017). The only logical thing preceding the prepositional phrase "from that source" that could compensate a person is the free medical clinic. Contrary to plaintiff's assertion, the performance of medical services is not a source of fees or compensation. Thus, the "from that source" language is referring to the free medical clinic. We do not find the language of the provision ambiguous, and thus we do not resort to other aids of statutory construction. Accordingly, we find the second requirement for immunity is the person did not receive a fee or compensation from the free medical clinic itself.

¶ 29                                    3. *Lease Agreement*

¶ 30        In this case, it is undisputed the Clinic did not directly pay Dr. Pedersen and McGinnes for their work at the Clinic. However, plaintiff notes that, under the Lease Agreement, Dr. Pedersen's and McGinnes's compensation from the Clinic was merely routed through OSF, and thus they were compensated by the Clinic. Dr. Pedersen and McGinnes disagree.

¶ 31        Under the Lease Agreement, OSF remained the employer of the leased employees and retained the authority to hire, fire, and assign them. The Clinic had the sole authority to direct and supervise the action of the leased employees on the Clinic's premises and to request the removal of any leased employee at any time and for any reason. The Lease Agreement further provided the leased employee would be discharging their duties and responsibilities under the agreement as an employee of OSF and an independent contractor of the Clinic. Nothing in the Lease Agreement was to be construed as creating a relationship of employer and employee or principal and agent between any of the leased employees and the Clinic. Moreover, for all leased employees, OSF was to (1) provide and maintain all insurance coverage, (2) provide and pay for employee benefits, and (3) pay all payroll related taxes. The Clinic was to pay OSF for the leased employees' productive salary and wages, nonproductive wages, and a percentage of the costs of the benefits provided by OSF to the leased employees. That payment was done by OSF giving the Clinic an invoice at the end of every month for all leased employees during that month. Additionally, the Lease Agreement provided the parties intended the Clinic to operate as a free medical clinic at all times.

¶ 32        Clearly, Dr. Pedersen and McGinnes were employees of OSF and not the Clinic, as OSF paid their salary, wages, insurance, benefits, and payroll related taxes. OSF paid all of the compensation of the leased employees, regardless of what the Clinic paid OSF for the leased employees' services. The source of Dr. Pedersen's and McGinnes's compensation was OSF. The fact the Clinic paid OSF an amount equal to the leased employees' salary and benefits for their services at the Clinic does not change the fact their compensation came from OSF.

¶ 33        Accordingly, we find Dr. Pedersen's and McGinnes's compensation did not come from the Clinic, and thus they are immune from liability under section 30(a) of the Good Samaritan Act (745 ILCS 49/30(a) (West 2004)).

¶ 34                                    C. Medical Practice Act

¶ 35        Since we have found Dr. Pedersen is immune under the Good Samaritan Act even if he actually rendered medical services to plaintiff, we need not address whether he was also immune as a collaborative physician under section 54.5(e) of the Medical Practice Act (225 ILCS 60/54.5(e) (West 2012)).

¶ 36                                    D. The Clinic

¶ 37        In this case, plaintiff did not raise a direct negligence claim against the Clinic. Instead, he raised a negligence claim under the theory of vicarious liability, under which an employer/master can be liable for the torts of an employee/agent that are committed within the scope of the employment. *Vancura v. Katris*, 238 Ill. 2d 352, 375, 939 N.E.2d 328, 343 (2010) (employer/employee); *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d 507, 533, 513 N.E.2d 387, 399 (1987) (master/agent). Thus, "[w]here the agent is not guilty, it necessarily follows that the party for whom he acted, the master, cannot be guilty." *Kirk*, 117

Ill. 2d at 533, 513 N.E.2d at 399. Since we have found both Dr. Pedersen and McGinnes immune from liability under the Good Samaritan Act, the Clinic is immune from liability on plaintiff's vicarious liability claim. Accordingly, we do not address whether the Clinic is directly immune from liability under the Good Samaritan Act and the Medical Practice Act.

¶ 38    Since defendants are all immune from liability, we find the circuit court's dismissal with prejudice of plaintiff's complaint and denial of plaintiff's section 2-1401 petition were proper.

¶ 39                                    III. CONCLUSION

¶ 40    For the reasons stated, we affirm the McLean County circuit court's judgment.

¶ 41    Affirmed.